**GREENBERGER v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 9727.**

United States Court of Appeals Seventh Circuit.

Nov. 7, 1949.

Llewellyn A. Luce, Washington, D. C., Wm. B. Berger, Lawrence S. Newmark, Chicago, Ill., I. Harvey Levinson, Chicago, Ill., for petitioner.

Theron L. Caudle, Assistant Attorney General, Maurice P. Wolk, Assistant to the Assistant Atty. Gen., Ellis N. Slack, Robert N. Anderson, Edward J. P. Zimmerman, Special Assistants to the Attorney General, for respondent.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This petition is to review a decision and order of the Tax Court of the United States, rendered and entered June 4, 1948, sustaining the determination of the Commissioner of Internal Revenue that there were deficiencies in petitioner's income tax for the calendar year 1943, in the amount of $85,527.19, and for the calendar year 1944, in the amount of $100,547.32.

The sole question for decision is whether the petitioner was taxable under Sec. 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), on the income of a partnership business or whether there was a valid family partnership for income tax purposes between the taxpayer, his wife and three trusts for the benefit of their children.

There is no dispute as to the evidentiary facts. For ten years prior to 1936, petitioner was the main stockholder in Steel Mill Products Company, an Illinois corporation, which both prior and subsequent thereto was engaged in the business of selling certain steel mill products in the Chicago area. In 1936, petitioner decided to create an independent estate for his wife, Elizabeth K. Greenberger, to assist and teach her in handling of monies and investments in his lifetime and to reduce his tax burden by di-

viding his estate with her. Accordingly, on March 18, 1936, petitioner made a gift to his wife of 350 of the 500 corporate shares of the Steel Mill Products Company. At the same time, petitioner gave his wife insurance and $5,000 in cash. A gift tax return was filed, showing the value of the corporate stock to be $19,704.00. No question is raised but that this was a completely executed and valid gift from petitioner to his wife. Subsequent events demonstrate that it was acted upon and treated by the parties as such.

There was no material change in the status of the parties during the years from 1936 to 1941, both inclusive. During that time petitioner drew from the corporation in salaries and dividends an amount in excess of $250,000, while his wife during the same period drew in dividends a sum in excess of $160,000. Distribution of dividends was made in proportion to the stock interest which petitioner and his wife had in the corporation. The income thus received by the wife was deposited in her individual bank account, and at no time was any of this money used by her in payment of any family expenses or for the care, maintenance and education of the children. By 1941, she had a net estate exceeding $125,000 in her own name and invested by her on her own behalf in bonds and real estate.

In 1941, petitioner and his wife decided to divide their corporate stock holdings with their three children, two daughters and a son. Accordingly, on January 16, 1941, petitioner and his wife created a trust for each of the three children. Mrs. Greenberger donated 60 shares and petitioner 25 shares of the corporate stock to each of said trusts. The trusts were irrevocable, with sole and exclusive authority vested in the trustees to operate and make distributions thereunder. After this transfer of stock by petitioner and his wife to the three trusts, the corporate stock was owned as follows: petitioner 72 shares, Mrs. Greenberger 172 shares, and each of the trusts 85 shares (one share was owned by an outsider). Gift tax returns were filed on account of these gifts to the trusts, and no point is made but that these gifts were

valid and complete. The trustees kept separate bank accounts for each trust and the funds in the main were invested in government bonds.

In 1941, shortly after the creation of the three trusts, petitioner and his wife for the first time considered the advisability of dissolving the corporation and forming a partnership. After consultation with their attorneys, this course was decided upon. It was thought that their children would be more likely to interest themselves in a partnership business. Also, it was expected that a lessening of their tax burden would be effected. Petitioner and his wife were advised of their personal liability under a partnership and that their personal estates would be liable for its obligations. On November 28, 1941, the corporation was legally dissolved, and on November 29, 1941, a limited partnership was formed, both in accordance with the statute of the State of Illinois. The customers of the corporation were notified of the formation of the partnership. Contributions were made to the partnership in the following amounts: petitioner $1400, each of the trusts $1700, and Mrs. Greenberger $3500. Each of such contributions was made from the separate estates and properties of the respective parties. None of it was advanced on behalf of or given to the other parties by the petitioner.

Thereafter, and particularly during the taxable years of 1943 and 1944, the entire net earnings of the partnership were paid out to the individual partners in the exact proportion determined and set by the partnership agreement, and each of the partners, including the three trusts, deposited these proceeds in their individual bank accounts. During the years in question, petitioner was paid by the partnership a salary of $45,000 per year which, together with other salaries and expenses, was deducted before distribution to the partners. Paul D. Greenberger, the son and beneficiary of one of the trusts, was employed by the partnership during the taxable years. In 1943, the first full year of his employment, he was paid $2175 as salary. By 1947, this salary was increased to $6450. A son-in-law whose wife was a beneficiary

in another of the trusts, was also employed by the partnership, but not until 1946, subsequent to the taxable years in question. Otherwise, none of the partners except petitioner performed any service for or on behalf of the partnership. The business was managed and operated under his general supervision. During all the years down to and including the taxable years in question, all of the family expenses were paid by him.

The partnership's income was derived almost exclusively from commissions earned upon sales. Fourteen sales engineers were employed, each of whom was assigned a specific portion of the partnership's exclusive territory. While these sales engineers were paid on an annual salary basis, the commission earned by them for the year 1943 was 76%, and for the year 1944, 63%, of the partnership's gross income. The commission earned by petitioner for the year 1943 was 24%, and for the year 1944, 37%, of the partnership's gross income. The expense of operating the business, exclusive of the salary paid to the petitioner, was in excess of $106,000 for 1943, and in excess of $127,000 for 1944.

The Tax Court found, "That petitioner, his wife, and the trustees of the three trusts did not constitute a valid partnership for federal income tax purposes during the taxable years." This finding is predicated upon the further finding, "Capital was not a material income producing factor in the operation of the business during the taxable years. The wife and the trustees of the three trusts did not perform any services for the business during the taxable years." The Commissioner in his brief here characterizes the position of the Tax Court thus, "Fundamentally the Tax Court found that the arrangement herein was not a partnership because of the personal service nature of the business."

The troublesome nature of the family partnership as it relates to federal taxation is evidenced by many decisions, and particularly by three recent decisions of the Supreme Court. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lust-

haus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, and Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210. This last named decision was rendered subsequent to that of the Tax Court in the instant case. The Commissioner argues that the rationale of these three recent cases supports the decision of the Tax Court, while the petitioner argues to the contrary and relies particularly upon Culbertson. The Commissioner asserts that Culbertson represents only an affirmation of the rationale of Tower and Lusthaus. We doubt the validity of this contention. At any rate, the Supreme Court in Culbertson reversed the decision of the Tax Court which had attempted to give effect to the Tower and Lusthaus decisions. More than that, two members of the Supreme Court, 337 U.S. at page 748, 69 S.Ct. at page 1217, while concurring in the result, expressed the view that the Tax Court had "properly applied the principles of the Tower and Lusthaus decisions."

Undoubtedly, the court in Culbertson has placed some limitation upon Tower and Lusthaus, particularly with reference to the tests to be employed in determining the existence of a valid family partnership. The extent of such limitation we need not attempt to determine. Isolated statements may be found in all of these cases which, when considered alone, appear to afford support for both sides in the instant case. What the court said in those cases, as well as in all cases, must be considered in connection with the particular facts of the case. The controlling factor in those decisions, so it seems to us, is that the Tax Court had found that there was no real partnership and no intent to carry on a business as such, and there runs through the Tower and Lusthaus decisions, especially the former, the thought that the partnership device was resorted to as a sham for the purpose of evading income taxes. For instance, in the Tower case the alleged gift from the husband to the wife was made three days before the partnership was formed, and it was only a book transaction. There was no real transfer of property to her over which she exercised dominion or

control. The wife used the income, 327 U.S. at page 291, 66 S.Ct. at page 538: "only for purposes of buying and paying for the type of things she had bought for herself, home and family before the partnership was formed." This led to the observation, 327 U.S. at page 292, 66 S.Ct. at page 538, "Consequently the result of the partnership was a mere paper reallocation of income among the family members. The actualities of their relation to the income did not change." A similar situation is disclosed in the Lusthaus case. The court stated, 327 U.S. at page 295, 66 S.Ct. at page 540: "His wife was not permitted to draw checks on the business bank account. * * * Neither partner could sell or assign the interest ascribed by the partnership agreement without the other's written consent. * * * no withdrawals were to be made under the partnership agreement unless both partners agreed."

Thus, the evidentiary facts in those cases are in marked contrast to those of the instant case. Here, more than six years prior to the first of the taxable years in controversy, petitioner made a valid gift of stock in the corporation to his wife. This thus became her absolute property, unfettered by any control or dominion by petitioner. She received dividends upon this stock in the same manner and to the same extent as petitioner received dividends upon stock owned by him. This income was invested by her, which together with its increments developed into a sizable estate. Her ownership of this stock and the income derived therefrom was no different, so far as we can discern, than if it had been owned by a party other than a family member. "It is the command of the taxpayer over the income which is the concern of the tax laws." Tower, supra, 327 U.S. at page 290, 66 S.Ct. at page 537. It follows that petitioner and his wife, when they created the three trusts in 1941 for the benefit of their children, donated their own individual property, and that they diminished their estates and their income to the extent of such donations. They retained no dominion or control over the property thus donated, and the income from such trust property has been received and invested by the respective trustees in accordance with their trust obligations.

When the partnership was formed, petitioner, his wife and the three trusts contributed to it in proportion to their stock ownership in the corporation. The only change effected was that the partners became liable for partnership obligations where no such liability existed as stockholders of the corporation. Petitioner's wife reported and paid a tax upon the income she received both as a stockholder in the corporation and as a member of the partnership. We think there could not be the slightest doubt but that she was liable for the tax upon the income she received from the corporation, and we likewise are unable to discern how she could have escaped a tax upon the income she received from the partnership. And the same can be said of the three trusts as to the income which they received from the partnership. A curious anomaly indeed would be presented if the petitioner were required to account for and pay a tax upon income which he had no right to receive but which right existed solely and exclusively in the wife and the three trusts. As was conceded in oral argument, Mrs. Greenberger and the three trusts no doubt could have successfully maintained an action against petitioner to recover their part of the partnership income had he attempted to take or receive it for his own.

As shown, the Tax Court stressed the fact that the wife and the trustees performed no services for the partnership business and that capital was not a material income producing factor. The Commissioner attempts to justify this solution of the question upon certain language in the Tower opinion. However, in the Culbertson opinion, wherein the facts are more similar to those of the instant case, concerning the tests employed in Tower, the court said, 337 U.S. at page 741, 69 S.Ct. at page 1213:

"Use of these 'tests' of partnership indicates, at best, an error in emphasis. It ignores what we said is the ultimate question for decision, namely, 'whether the partnership is real within the meaning of the

994

federal revenue laws' and makes decisive what we described as 'circumstances [to be taken] into consideration' in making that determination."

■ The Tax Court bottomed its finding that no valid partnership existed upon the premise that "Capital was not a material income producing factor in the operation of the business." True, the capital invested in the partnership by the respective parties was not large, but the point is that they decided it was sufficient for the needs of the business in connection with the available income which the partnership had. More than that, the parties stood ready to contribute further capital, if needed, from the respective estates and, of course, they were personally liable for the liabilities of the partnership. More important, however, we think this contention is answered in the Culbertson case, where the court stated 337 U.S. at page 742, 69 S.Ct. at page 1214:

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." This pronouncement reads as though it might have been written with the facts of the instant case in mind.

The court in the Culbertson case left no doubt that the predominant factor is the good faith and legitimate purpose of the parties in forming a partnership. The court said, 337 U.S. at page 743, 69 S.Ct. at page 1215: "But the Tax Court did not view the question as one concerning the bona fide intent of the parties to join together as partners." And on the following page, the court again emphasized the element of good faith by stating:

"If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. The Tower case did not purport to authorize the Tax Court to substitute its judgment for that of the parties; it simply furnished some guides to the determination of their true intent."

Another contention closely tied in with the lack of capital as an income producing factor is that petitioner by the rendition of personal service was responsible for production of the income. It is true the court in Tower stated, 327 U.S. at page 289, 66 S.Ct. at page 537, "The issue is who earned the income," but the court also stated, "that issue depends on whether this husband and wife really intended to carry on business as a partnership." If the partnership in the instant case was bona fide, as we think it was, the income earned was that of the partnership and not that of petitioner. While petitioner undoubtedly was the predominating force in the conduct and management of the business, the Commissioner overlooks the fact that the partnership paid him a salary of $45,000 per annum during each of the taxable years for his services thus rendered. In this connection, it is pertinent to note that only 24% of the partnership's income for 1943, and 37% for 1944, were attributable to commissions earned by petitioner. The remainder of the income was attributable to commissions earned by other employees, called sales engineers. The Commissioner, in our view, erroneously treats these sales engineers as employees of petitioner rather than of the partnership.

■ With all due respect for the Tax Court, we reach the conclusion that its finding that no valid partnership existed for federal income tax purposes during the taxable years is without substantial support. Particularly is this so when its finding is predicated upon what we regard as an erroneous premise. It follows that the deficiencies in petitioner's income tax for the years in question were improperly assessed,

and that petitioner is entitled to an order in his favor.

The decision appealed from is, therefore, reversed, and the cause remanded for such purpose.