## CROSSLEY v. CAMPBELL.

### No. 10119.

United States Court of Appeals
Seventh Circuit.

Oct. 26, 1950.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, S. Walter Shine, A. F. Prescott, Frederic G. Rita, Sp. Assts. to Atty. Gen., Otto Kerner, Jr., U. S. Atty., John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., for appellant.

J. Arthur Kealy, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

DUFFY, Circuit Judge.

This is a family partnership tax case involving the taxable year 1943. From 1937 to June 30, 1942, at Chicago, Illinois, plaintiff operated, as a sole proprietorship, Electro Products Laboratories, which manufactured electrical and radio equipment and rendered special engineering services.

Plaintiff's son, Richard C. Crossley, reached the age of 21 on December 21, 1941. Richard attended high school in 1937, 1938 and 1939, and thereafter attended the University of Illinois, completing the freshman year and one semester of the sophomore year in the electrical engineering course. In February, 1941, he left the University to enroll in the Central Y. M. C. A. College in Chicago. In September, 1941, he entered the Chicago Branch of R. C. A. Institutes, an engineering school, and in February, 1942, he transferred to its New York Division, which he attended until March 15, 1943, when he completed the radio engineering course.

During each summer and Christmas vacation in the years when Richard was attending high school and the University of Illinois he worked for his father at the Laboratories. In 1942 he did not have a summer vacation and only worked there two weeks at Christmastime.

About June 30, 1942, plaintiff and his son, Richard, executed a formal partnership agreement. It set forth that Richard "is presently completing his studies of electrical engineering and desires to purchase an interest in Electro Products Laboratories," and that "Alfred Crossley desires to take into said business a partner who is capable of handling some of the special engineering of said business."

Payment for Richard's interest in the partnership business was provided for in the following manner: "(a) He will devote as much time as possible, consistent with the completion of his studies as an electrical engineer, to the development of the business of Electro Products Laboratories; and (b) For a period of two years from the date hereof he agrees to draw a sum equivalent to forty per cent (40%) of the net profits of said business instead of the fifty per cent (50%) to which he would otherwise have been entitled."

Upon completion of his course of studies in New York, about March 15, 1943, Richard returned to Chicago and was placed in charge of the production line (manufacturing and testing of battery eliminators) at the Laboratories, a position calling for the exercise of engineering and managerial judgment, and work. Three men and 26 women were engaged in work under his direction. In May, 1943, Richard was called to duty in the Navy and was commissioned as an ensign. He remained in the Navy for 3½ years, and was attached to the Electronics Office of the Bureau of Ships, where most of his duties were in connection with sonar work, which is underwater sound detection of submarines. He was discharged in June, 1946, with the rank of lieutenant, senior grade. On July 5, 1946, he returned

to work at Electro Products Laboratories, which in May, 1946, had been organized as a corporation. Richard was selected as vice president and became the owner of 25% of the common stock.

The partnership return for the year 1943 disclosed income of $50,314.41 before deductions. The largest item contributing to the income was "commissions earned," resulting from plaintiff's sales of electrical instruments manufactured by other companies. The partnership return showed that plaintiff's distributive share of the net income of the partnership was $17,880 and Richard's was $11,920. Plaintiff entered as income in his individual tax return his distributive share of the partnership, as shown in the partnership return. However, the Commissioner of Internal Revenue assessed a deficiency on plaintiff's individual tax owed, claiming that Richard C. Crossley was not a bona fide partner. Plaintiff then paid $8,918.95 additional to the Collector, and filed a claim for refund, which claim was rejected and this suit resulted.

The district court, after quoting extensively from Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, found that the plaintiff and his son, Richard, actually intended to form a partnership in 1942; that plaintiff distributed the income from the firm's activity to the son, retaining no control over the sums so distributed; that in all ways plaintiff viewed the son as a partner and treated him as such; that the son pursued a course in school in order to render himself more valuable to the business run by the partnership; that he was prevented from continuing his responsible position of production manager only by the fact that he was called into the Naval Service. The court found further that the son actually rendered valuable services to the firm in 1942 and 1943, and that the partnership was bona fide. From the judgment entered for the plaintiff, the Collector brings this appeal.

Income tax controversies involving family partnerships have claimed the attention of the courts to a considerable extent in recent years. In 1946 the Supreme Court decided Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, but these guideposts themselves soon were the subject of controversial interpretation, and in 1949 the Supreme Court extensively discussed and explained the Tower and Lusthaus decisions in Commissioner v. Culbertson, supra. As Culbertson is the Supreme Court's latest expression on the subject, we shall endeavor to apply the principles there laid down to the facts of the case at bar.

In Culbertson the Tax Court had held that a bona fide partnership did not exist between the taxpayer and his four sons, age 24, 22, 18 and 16 respectively. The Supreme Court stated that the Tax Court had applied the wrong legal standards. The case was remanded to the Tax Court to determine as to which of the sons there was a bona fide intent that they be partners in the conduct of the cattle business. The court observed, 337 U.S. at pages 737 and 741, 69 S.Ct. at page 1212, 93 L.Ed. 1659:

"First. The Tax Court read our decisions in Commissioner v. Tower, supra, and Lusthaus v. Commissioner, supra, as setting out two essential tests of partnership for income-tax purposes: that each partner contribute to the partnership either vital services or capital originating with him. * * *

* * * * * *

"Second. * * * It treated as essential to membership in a family partnership for tax purposes the contribution of either 'vital services' or 'original capital.' Use of these 'tests' of partnership indicates, at best, an error in emphasis. It ignores what we said is the ultimate question for decision, namely, 'whether the partnership is real within the meaning of the federal revenue laws' and makes decisive what we described as 'circumstances (to be taken) into consideration' in making that determination."

We agree with the statement of the court in Wodehouse v. Commissioner of Internal Revenue, 4 Cir., 178 F.2d 987, 993, that the gist of the Culbertson deci-

642

sion is in the following quotation, 337 U.S. at p. 742, 69 S.Ct. at page 1214, 93 L.Ed. 1659.

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

This court stated in Greenberger v. Commissioner of Internal Revenue, 7 Cir., 177 F.2d 990, 994: "The court in the Culbertson case left no doubt that the predominant factor is the good faith and the legitimate purpose of the parties in forming a partnership. * * *"

Footnote 6 in the Culbertson case, 337 U.S. at p. 739, 69 S.Ct. at page 1213, 93 L.Ed. 1659, is of significance to the facts in the case at bar: "Of course one who has been a bona fide partner does not lose that status when he is called into military or government service, and the Commissioner has not so contended. On the other hand, one hardly becomes a partner in the conventional sense merely because he might have done so had he not been called."

The concurring opinion in Culbertson quotes from the Tower decision, stating, 337 U.S. at p. 752, 69 S.Ct. at page 1219, 93 L.Ed. 1659: "* * * the Tower opinion states the ultimate issue to be 'whether this husband and wife really intended to carry on business as a partnership.' * * *"

In the case at bar the evidence amply supports the trial court's findings that plaintiff and his son intended to and did form a bona fide partnership in 1942, that plaintiff regarded his son as a part-

ner and treated him as such, and that after May, 1943, the son was prevented from carrying out his duties of contributing services and capital because he was called into service with the Navy.

The trial court's finding of good faith and legitimate purposes of plaintiff and his son, in forming the partnership, cannot be ignored or brushed aside. Surely such findings are not clearly erroneous. Under the tests laid down in the Culbertson case, we think the case was correctly decided by the district court, and the judgment is

Affirmed.