### VISINTAINER v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 4099.

United States Court of Appeals
Tenth Circuit.
March 10, 1951.

F. R. Carpenter, Craig, Colo., and Stephen H. Hart, Denver, Colo. (Fred A. Videon, Craig, Colo., and Claude M. Maer, Jr., Denver, Colo., on the brief), for petitioner.

Helen Goodner, Special Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack and Louise Foster, Special Assts. to the Atty. Gen. on the brief), for respondent.

Before PHILLIPS, Chief. Judge, and BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This proceeding is here on petition to review a decision of the Tax Court; and generally stated, the two questions presented for determination are whether the entire taxable income from a sheep ranch business was taxable to the taxpayer notwithstanding his gift of a portion of the sheep to his minor children, and whether section 47(c)(2) of the Internal Revenue Code, 26 U.S.C.A. § 47(c)(2), offers certain benefits in computing net income for a short time where the taxpayer fails to apply for such benefits.

The proceeding involves income tax deficiencies for the period January 1 to October 31, 1942, and for the fiscal years ended October 31, 1944 and 1945. The material facts are not in dispute. Louis Visintainer, hereinafter referred to as the taxpayer, was born in Austria. He came to this country when he was about fifte

years of age, and he is a naturalized citizen of the United States. Most of his life has been devoted to the sheep business in Wyoming and Colorado. He started as a sheepherder; later he operated as a partner with other sheepmen, and as an individual owner of sheep run in a herd with other individually owned sheep; and during the period here in question he owned and operated a large ranch in Colorado consisting of about 30,000 acres of land which he owned, about 20,000 acres which he leased from other private owners, and about 40,000 acres of public land which he leased. He ran on the ranch an average of 4,000 to 6,000 head of sheep. His brother-in-law originally owned about 300 sheep which were commingled with the sheep of the taxpayer; he also owned some land which was used seasonally for grazing purposes; and he was foreman of the ranch on a salary basis and he received a share of the profits.

In October, 1942, the taxpayer made gifts of 500 ewes with lambs to each of his four minor children, Dean, then 13 years of age, Mary, 11, Rosalie, 9, and Carmen, 6. In each instance, the sheep included in the gift were branded with the initial of the first name of the child to whom the gift was made. The brands were stamped on the sheep with oil paint, and they were in addition to the registered oil paint brand of the taxpayer already on the sheep. The proposed gifts had been discussed in the family; the children were told that the sheep were being given to them; and some of the children were present and assisted with the branding. Separate bills of sale were executed, and the sheep were listed in the names of the children in the records of the county tax assessor. The taxpayer made gift tax returns to the United States and to the State of Colorado, and he paid the gift taxes. The sheep conveyed to the children were not separated and removed from the ranch. They remained in the herd, and there was no separation of the lambs and no division of the wool produced. The taxpayer managed the business including the sale of sheep, the sale of wool, the purchase of sheep, and the purchase of supplies. Records of the ranch operations were kept in a ledger by the wife of the taxpayer. After the gifts were made, she opened an account for each of the children with a ledger credit of $5,000, representing 500 sheep at $10.00 per head. During the subsequent years all of the proceeds from the sale of sheep and wool and all expenses of operation were apportioned among the taxpayer, the foreman, and the four children. The amounts allotted to the children and credited to their accounts in the ledger were in proportion to the number of sheep which they owned; and in October of each year, the accounts of the children were charged with a proportionate part of the general expenses of the total cost of operating the ranch. After the foreman was paid his apportioned share of the receipts from the sale of sheep and wool, the balance was deposited in the individual bank account of the taxpayer. A separate bank account with a deposit of $100 was opened for the oldest child when he became 16 years of age. Otherwise no separate bank account was opened for any of the children and no payment of funds was made to them. Instead, the amount due the children was credited in their ledger accounts. The accounts of the children were charged with their individual property tax and with their income tax. The children had access to the ledger accounts; their ownership of sheep was discussed frequently; and they kept informed in respect to the losses in sheep, the replacements, and the number which they owned. Some of the money credited to the account of the children was invested in Government bonds, issued in the names of the children with their father or mother as alternate beneficiary. None of the money was used for the support, maintenance, or education of the children. All outlays for those purposes were borne by the taxpayer. At the time of the making of the gifts and during the subsequent years in question, the children were attending school. None of them did regular work on the ranch. The girls were too young to be of much assistance with the business, but they did sometimes help with the sheep. The son worked during vacations and was paid

wages. As he grew older, he assumed some managerial duties; and on one occasion when his father was gone to Europe, he had complete charge of a substantial part of the ranch operations. At the time of the hearing before the Tax Court, the son was a student at the State Agricultural College of Colorado, was majoring in animal husbandry, and planned to engage in the sheep business. A sixteen-hundred-acre tract of grazing land was purchased in his name at a cost of $9,500, and the amount was charged to his account in the ledger.

After the execution of the conveyances to the children, the taxpayer furnished financial statements from time to time for the purposes of establishing or maintaining credit. Only the sheep in his name and bearing his brand were included. The sheep conveyed to the children and bearing their individual brands were not included. In 1946, an inspector for a loan company went to the ranch and inspected the sheep. He found sheep running in five brands. The taxpayer explained to him that the sheep in his registered brand belonged to him, and that the sheep in the four other brands belonged to the children. The count made by the inspector showed that there were 8,580 sheep in the herd which included 4,675 lambs, and that 2,547 bore the brands of the children. And in making his report, the inspector deducted the 2,547 sheep with the notation that they belonged to the children.

Separate federal income tax returns were filed for the taxpayer and the four children for the taxable years involved. Prior to 1942, the taxpayer made his returns on a calendar year basis. For 1942, pursuant to permission granted by the Commissioner of Internal Revenue, he changed to a fiscal year ending October 31. In making the change he filed a return for the period January 1 to October 31, 1942. The Commissioner refused to recognize the alleged gifts of sheep to the children, treated all of the taxable gain from the ranch other than that of the foreman as income of the taxpayer, annualized as provided in section 47(c)(1) of the Internal Revenue Code the income for the short period in the year 1942, and imposed resulting deficiencies against the taxpayer. The Tax Court sustained the action of the Commissioner, 13 T.C. 805; and the taxpayer sought review.

 Taking up the first question, it was the expressed view of the Tax Court that the taxpayer stopped one step short of the usual family partnership—the execution of the partnership agreement; that the taxpayer merely assigned to his children fractional interests in one of several types of capital used in the ranch enterprise; and that the effect of the whole arrangement was merely the reallocation of income in the family group. It is the well established rule in cases involving liability for taxes that transactions between members of a family which have the effect of reducing taxes will be subjected to careful scrutiny. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Hogle v. Commissioner, 10 Cir., 132 F.2d 66; Grant v. Commissioner, 10 Cir., 150 F.2d 915. But membership in the immediate family alone and without more is no ground for disregarding for income tax purposes gifts of property made by a father to his children. Henson v. Commissioner, 5 Cir., 174 F.2d 846; Early v. Atkinson, 4 Cir., 175 F.2d 118. And the test to be applied in a case of this kind is whether good faith, bona fide gifts were made to the children or the device was resorted to as a sham for evading income tax. Greenberger v. Commissioner, 7 Cir., 177 F.2d 990.

 This transaction was not in the form or color of a family partnership or of an assignment of undivided interests in the sheep. It was in the form of gifts to the children. The taxpayer urges that it constituted gifts, and it must stand or fall as bona fide gifts rather than a family partnership or assignments of undivided interests in property. Ordinarily, the essential elements of a completed and effective gift for income tax purposes are a

donor competent to make the gift, a clear and unmistakable intention on the part of the donor to make it, a donee capable of accepting the gift, a conveyance or transfer sufficient to vest legal title in the donee, without power of revocation at the will of the donor, and delivery to the donee of the corpus of the gift or of the most effectual means of commanding dominion of it. In order to be effective as a gift, the donor must do everything reasonably permitted by the nature of the property and the circumstances of the transaction in parting with all incidences of ownership. Edson v. Lucas, 8 Cir., 40 F.2d 398; Weil v. Commissioner, 5 Cir., 82 F.2d 561; Coffey v. Commissioner, 5 Cir., 141 F.2d 204.

 The taxpayer was competent to make the gifts, and he affirmed and re-affirmed by declaration and conduct a clear and unmistakable intention to make them. The children were capable in law of accepting the gifts. Written conveyances were executed, and they were sufficient to vest in the children legal title to the sheep constituting the gifts, without power of revocation at will of the taxpayer. The sheep were not moved to another ranch or to other range. But they were singled out and branded with the identifying brands of the children. They were not then delivered into the physical possession of the children. But it is not invariably necessary to the validity of a gift inter vivos that the property be delivered to the donee personally. The taxpayer was the natural guardian of his minor children, and he was capable in law of receiving a gift for them. After being singled out and the separate brands of the children placed upon them, the sheep were returned to the herd and they were under the management and control of the taxpayer. But once a gift inter vivos has been completed and title has passed to the donee, the fact that the donor subsequently has possession of the property as caretaker or manager does not affect the validity of the gift. Edson v. Lucas, supra.

 The declared motive of the taxpayer in making the gifts was in order for the children to learn under his guidance and supervision how to handle the property efficiently, not avoidance of taxes. If he intended in good faith to make valid gifts in order for the children to gain experience under his guidance and supervision in the handling of livestock efficiently, what more could he have done to effectuate that purpose? What more could the law reasonably exact of him as a means of making the gifts effective? The sheep were singled out and branded. Conveyances were executed. No contingency, condition, qualification, reservation, or reversion was attached and made a part of the gifts. The sheep were listed for taxes in the names of the children, accounts in the ledger were opened and maintained, and out of the proceeds which accrued from year to year the individual taxes and the income taxes of the children were paid. And the sheep were excluded from the subsequently made financial statements of the taxpayer. If in addition to all of that, the sheep had been moved from the ranch and out of the possession of the taxpayer, and the revenues derived from their operation had been deposited in separate bank accounts of the children, there could be no doubt that the gifts would have been effective for income tax purposes. But those attenuated circumstances are merely factors in the equation without decisive effect in determining tax consequences arising out of the picture. The case should be decided upon the import and reasonable construction of the arrangement rather than upon the failure to move the sheep from the ranch and supervision of the taxpayer and the failure to deposit in separate bank accounts of the children the revenues derived from the operation of the sheep. Considered in the light of all the facts and circumstances, we fail to find in the transaction the conventional badges of a device to evade income taxes. The facts and circumstances negate the view that the gifts were merely a colorable subterfuge to reduce income taxes. To say that the gifts were ineffective for income tax purposes would be the equivalent of holding that a father is disenabled to make a gift to his minor child which is effective in point of tax consequences if he retains or subsequently exercises any control or man-

agement of the property or the fruits therefrom solely for the benefit of the estate of the child. Neither the letter nor the spirit of revenue legislation extends its reach that far. The gifts were effective for income tax purposes, and the taxpayer was not liable for tax on the gain derived from the property given to the children.

Turning to the second question, it is the contention of the taxpayer that in determining his tax liability for the period January 1 to October 31, 1942, he should be allowed the benefits of section 47(c)(2) of the Internal Revenue Code. But that subsection expressly provides that its benefits shall not be allowed unless the taxpayer, at such time as regulations prescribed thereunder provide, makes application therefor in accordance with such regulations. The taxpayer failed to make application for the benefits of the subsection in accordance with the regulations, or otherwise. His failure to comply with the requirement of the subsection in respect to making the application forecloses him from invoking its benefits.

The decision is reversed and the proceeding remanded.