**Robert W. LANNAN, Appellant,**

v.

**Elmer F. KELM, Appellee.**

**Emil B. ASLESEN, Appellant,**

v.

**Elmer F. KELM, Individually and as Collector of Internal Revenue, Appellee.**

**Elmer F. KELM, Individually and as Collector of Internal Revenue, Cross-Appellant,**

v.

**Emil B. ASLESEN, Cross-Appellee.**
**Nos. 15041, 15042, 15026.**

United States Court of Appeals
Eighth Circuit.
April 26, 1955.

Joseph A. Maun, St. Paul, Minn. (William R. Busch and Bundlie, Kelley & Maun, St. Paul, Minn., were with him on the brief), for Robert W. Lannan and Emil B. Aslesen.

Philip R. Miller, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Hilbert P. Zarky, Sp.

Assts. to the Atty. Gen., George E. Mac-Kinnon, U. S. Atty., and Alex Dim, Asst. U. S. Atty., St. Paul, Minn., were with him on the brief), for Elmer F. Kelm.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

## VAN OOSTERHOUT, Circuit Judge.

Nos. 15,041 and 15,042 are "family partnership" tax cases arising under sections 22(a), 181, 182, and 3797 of the Internal Revenue Code of 1939, 26 U.S.C. §§ 22(a), 181, 182, and 3797, wherein the validity of partnerships between husbands, wives, and children is in dispute. Two families are involved. Because both figured in the facts relating to three disputed partnerships, these actions were consolidated for trial before a jury in the court below and for purposes of appeal. The jury, in answering special interrogatories, found that the partnerships involved were "not bona fide partnerships within the meaning of the income tax laws," and it is from the jury's verdict and the judgments entered thereon that these appeals have been taken. In No. 15,026, the Collector of Internal Revenue appeals from the action of the trial court in declining to accept the special verdict of the jury in regard to income from and capital gain on real property held in joint tenancy by Emil B. Aslesen and his wife. This will be treated separately after the partnership problem has been determined.

The issues urged by appellants before this court in regard to the partnerships are briefly these:

1. Whether the trial court erred in not directing a verdict for the appellants as a matter of law, because the record does not warrant the findings by the jury that the parties were not bona fide partners and that certain transfers of corporate stock were not bona fide.

2. If there was no error in refusing to direct a verdict, the appellants were entitled to a new trial because of prejudicial error by the trial court in excluding certain evidence and in giving certain instructions to the jury.

The voluminous record and briefs in this case necessitate a statement of the facts. The three disputed partnerships involved and the composition of each are as follows:

The Northwestern Bakers Supply Company, hereinafter referred to as Northwestern, was composed of appellant Robert Lannan and his wife, Eleanor [one family]; appellant Emil Aslesen and his wife, Carrie, and their son, Kenneth, who was in the Marine Corps during the time involved [one family]; and Arthur and Bernice Aslesen, brother and sister-in-law, respectively, of Emil Aslesen [one family]. Arthur and Bernice Asleson are not involved in this litigation.

The Minneapolis Beverage Supply Company, hereinafter referred to as Minneapolis, was composed of Robert and Eleanor Lannan, Emil and Carrie Aslesen, and Arthur and Bernice Aslesen.

The Midland Food Products Company, which is successor to Midland Food Products, Inc., hereinafter referred to as Midland, was composed of Robert and Eleanor Lannan; Emil and Carrie Aslesen and their youngest son, Raymond, who was but 17 years of age in 1943; and Arthur and Bernice Aslesen.

Emil Aslesen, Robert Lannan, and Arthur Aslesen were primarily engaged in the conduct of K. Aslesen Company, not here involved, which is in the restaurant supply and institutional grocery business. All three were shown to have had considerable experience in this general type of activity in the State of Minnesota, which is in some respects related to that carried on by the three partnerships involved. All the partnerships dealt with sugar products, items in short supply because of World War II rationing that began in April 1942. There was no showing that any of the wives, or the two sons of Emil Aslesen, had any previous independent business experience of this nature. There own testimony was that they relied almost entirely on the advice

of their husbands and father in their business dealings and investments.

For the sake of clarity, at the expense of brevity. it will be necessary to consider the formation and operation of each partnership separately.

Northwestern was organized in November 1942 to take advantage of the intangible assets Robert Lannan acquired for $500 from the trustee of a bankrupt corporation. The most valuable asset was a sugar allotment. Initially, an oral partnership between Emil Aslesen, Robert Lannan, Eleanor Lannan, and Kenneth Aslesen, was formed. No business was conducted except some litigation involving the sugar allotment until May 1, 1943, when a new written partnership agreement was executed which included Arthur, Bernice, and Carrie Aslesen, for the first time. No fixed amount of capital was specified, but percentages for capital contributions to be made as needed and profit distributions were included, which resulted in each of the three families when considered as a unit contributing and receiving a one-third share. Emil Aslesen and Robert Lannan were to receive a percentage of the profits for their services. All the others were to contribute capital, which they did several months later. The partnership had but one salaried employee, a bookkeeper with an office at K. Aslesen Company. This was sufficient as its products were produced entirely by an independent manufacturer and sold exclusively by brokers. Thus, none of the partners contributed valuable services other than the occasional advice of Emil Aslesen and Robert Lannan who were full time employees of the K. Aslesen Company. Eleanor Lennan's capital contribution was by check from Robert Lannan, made payable to Northwestern, which was claimed to be a gift. The capital contribution of Carrie and Kenneth Aslesen was by Emil Aslesen's check to Northwestern, which was claimed to be a loan of one-half the amount to each. No provision was made for the repayment of these claimed loans. Periodic distributions of profits were made according to the agree-

ment. The partnership continued until 1946 when it was dissolved, and a corporation was formed to carry on the business. The corporate stock was distributed to the partners who had contributed capital, thus Emil Aslesen and Robert Lannan were excluded.

Minneapolis was organized in the spring of 1942 by Emil Aslesen, who contributed the initial capital of $10,000, Robert Lannan, and Arthur Aslesen. The profits were to be divided equally after January 1, 1943, at which time, because of financial success, Emil Aslesen was able to withdraw his original contribution. Like Northwestern, Minneapolis was operated through an independent manufacturer, brokers, and the same bookkeeper. Early in 1943, the addition of partners was discussed. The wives of the three original partners consented to become partners, and a written partnership agreement was executed on May 1, 1943, the same day as that of Northwestern, under the supervision and with the advice of the same attorney. The women were to contribute capital, the men were to contribute services, and all were to share equally in the profits. At that time Minneapolis was using past profits for working capital and continued to do so for approximately six months, when the women made their first and only capital contributions. The 1943 profits when distributed were shared equally with the women, even though their capital contributions had been made only about two months prior to the computation of such profits. Eleanor Lannan's contribution was said to be a gift made in the same manner as that in the Northwestern partnership. Carrie Aslesen's contribution was by her own check of November 1, 1943, but on the preceding day she allegedly borrowed the same amount of money from Emil Aslesen, her husband. Here also, as in Northwestern, none of the partners contributed valuable services except for occasional advice from one or the other of the men. Profits were distributed according to the provisions of the partnership agreement. Minneapolis was terminated in 1946 on the

same date and in the same manner as Northwestern. It was succeeded by a corporation with only the three women as stockholders.

Midland, initially, had been a corporation, the unsuccessful successor to the bankrupt Northwest Bakers and Confectioners Company whose intangible assets were the basis of Northwestern, in which Emil Aslesen, Robert Lannan, and Arthur Aslesen purchased the outstanding stock in 1943, each securing one-third. Several months later Robert Lannan allegedly gave his wife, Eleanor, a large portion of the stock. Emil Aslesen also allegedly sold a large portion of his stock to his wife, Carrie, and son, Raymond, on credit, but no evidence of an obligation to repay was shown to have been made. That appropriate entries were made on the corporate books in regard to these transfers is disputed on appeal. Midland in its corporate form was liquidated on December 31, 1943, but continued operations as a partnership on January 1, 1944. The capital gain resulting from this transaction was reported by Robert and Eleanor Lannan separately, but Emil Aslesen included in his 1943 individual tax return the capital gain which, according to the claimed stock ownership, should have been reported by Carrie and Raymond Aslesen. Emil Aslesen said during the trial that he prepared his own return for 1943 and made a mistake because he was not accustomed to making his own returns. Midland, unlike the other two partnerships, was a manufacturing organization with the original employees continuing its operations after it was acquired by the Lannan and Aslesen interests. There was no showing that any of the persons involved here, either as stockholders or as partners, contributed any valuable services. Profit distributions were made according to the Midland records and so reported for tax purposes. The Midland partnership was also dissolved in March 1946, and was succeeded by a corporation whose stock was distributed according to the capital contributions on the partnership records, the same as in the other situations.

Before commenting on the disputed facts, we must take notice of the undisputed ones. The business records of the partnerships reflected the facts as urged by the appellants. They introduced evidence showing that the partnerships would be considered valid under local law, i. e., partnership agreements drafted by an attorney of unquestionable integrity, the filing of trade names with State officials, the filing of partnership tax returns, the carrying of insurance in the names of the partnerships, the receiving of publicity about the partnerships by recognized business and financial publications, the receiving of necessary permits for commercial use of alcohol from both the State and Federal Governments, the paying of local taxes assessed against them as partners, and compliance with the workmen's compensation law as a partnership. That this would have been sufficient for local purposes has not been disputed by the Collector at any time.

The disputed evidence relates to the source of the capital involved and the use made of profits after they had been distributed. With respect to the Lannans, the capital contributions were characterized as gifts from the husband to his wife. The evidence before the jury showed that on a prior occasion, in sworn affidavits to the Collector in regard to their income taxes, they claimed that the contributions were the repayment of a loan from the wife to her husband at the time of their marriage. Both admitted this was false and explained they signed the affidavits at the direction of an accountant who was handling their tax difficulties. The records of transactions between them were obviously incomplete and their accuracy was disputed at the trial. Evidence was admitted to show that on one occasion Robert Lannan listed the assets now claimed by his wife on a financial statement used to secure a loan in his own behalf. Exclusion of explanatory evidence as to the statement will be treated later in reference to

claimed prejudicial error. The record also shows that some of Eleanor Lannan's income, through the media of non-interest bearing loans, was directly used to reduce Robert Lannan's interest bearing obligations to third persons. It was conceded that some of her income may have been spent for personal items, but there was no proof as to the extent.

The financial dealings of Emil Aslesen and his family were of a similar nature. The records were incomplete and their accuracy was in dispute. Emil Aslesen did not deny that at one time the alleged loans to his family were claimed by him to have been gifts. No evidence of indebtedness was executed by Carrie Aslesen in this situation, but, as will be shown later, notes were used on another occasion. When asked to elaborate on various securities listed in her name, Carrie Aslesen admitted she knew little or nothing about them and had relied on her husband's counsel. The evidence relating to the transactions with the sons was likewise incomplete and questioned as to accuracy. There was no evidence of indebtedness for the claimed loans. However, it is claimed that the loans were repaid by endorsement of profit distribution checks to their father. Raymond's income was handled by his parents because he was a minor at the time. The evidence is in conflict as to whether some of this money was spent in his behalf for items that normally would not be provided for their children by parents of comparable social and financial standings. Some of Raymond's income was kept in bank accounts under the control of his parents until he reached his majority, and some was invested for him in his own name. Kenneth was a Marine, stationed at Pensacola, Florida, during the period of time involved. He was represented in these transactions by his father under a very broad power of attorney which was not dated, witnessed, or acknowledged before a notary, despite the fact that the drafting attorney specifically asked that this be done. Except for repayment of the alleged loans from the first profit checks, Kenneth's income

was used for the benefit of himself and his family, such as buying a home, and investing in K. Aslesen Company. The evidence as to the intent and financial capacity of either son to repay the loan, whether the venture was profitable or not, was subject to question.

The record indicates that Eleanor Lannan, Carrie Aslesen, Raymond Aslesen, and Kenneth Aslesen knew little, if anything, about the partnerships and their rights and duties as partners. There is no evidence in the record which shows that they made any serious attempt to become acquainted with or participate in partnership affairs at any time. The record does show that the ventures were extremely successful financially. Whether this was a result of the capital investment or the participation by the appellants, especially in acquiring sugar, was not clear.

The special interrogatories submitted to the jury asked whether the partnerships and the transfers of the Midland stock were bona fide "within the meaning of the instructions which the Court has given you." All were answered in the negative.

Now we turn to the issues before this court. Was there evidence to support the findings of the jury so that as a matter of law the denial of a directed verdict was proper?

The best statement of the rule on this point is to be found in the case of National Alfalfa Dehydrating & Milling Company v. Harold Sorensen, etc., 8 Cir., 220 F.2d 858, wherein this court said:

"* * * In considering the question of the sufficiency of the evidence to sustain the verdict the evidence must be viewed in a light most favorable to the prevailing party. All conflicts in the evidence must be presumed to have been resolved in favor of the prevailing party and he is entitled to all such favorable inferences as may reasonably be drawn from the facts proven and if, when so viewed, fair minded men might reasonably reach different conclusions

the case is one for the jury and not for the court. National Postal Transport Ass'n v. Hudson, 8 Cir., 216 F.2d 193; Aetna Life Ins. Co. v. McAdoo, 8 Cir., 115 F.2d 369."

In the case of Woodward v. United States, 8 Cir., 208 F.2d 893, in answering the same question in a similar tax case, the court said, 208 F.2d at pages 897-898:

> " * * * Arrangements between husband and wife affecting tax liability may be genuine and effective or may be in the nature of camouflage and ineffective so far as tax consequences are concerned. Questions of good faith, motive, intent, and the like, if at all doubtful, are ordinarily questions to be determined by the trier of the facts. * * * "

See also Kasper v. Banek, 8 Cir., 214 F.2d 125, wherein it was held that the jury is to determine whether a claimant for refund of income taxes has sustained his burden of proof when the taxpayer's evidence consisted of testimony of interested witnesses even though generally uncontroverted.

The main argument of the appellants is that as a matter of law these partnerships were valid under local law, as shown without reference to the testimony of interested witnesses, thus fixing the intent of the parties which would determine the taxability of the partnerships under the doctrine of Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. This argument is based on legal form—a written agreement, publicity, and compliance with various statutes and other legal requirements according to the nature of the partnership. As we read the Culbertson case, it eliminates the concept of a special partnership for tax purposes, and this disregard for objective standards is best shown by the Court's statement, 337 U.S. at page 742, 69 S.Ct. at page 1214:

> " * * * The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

See Crossley v. Campbell, 7 Cir., 184 F.2d 639, 641; Stanback v. Robertson, 4 Cir., 183 F.2d 889; Wisdom v. United States, 9 Cir., 205 F.2d 30, 34; Stanchfield v. Commissioner of Internal Revenue, 8 Cir., 191 F.2d 826, 828. See also Slifka v. Commissioner of Internal Revenue, 2 Cir., 182 F.2d 345, where it is said at page 346:

> " * * * That this makes motive a test of taxability is true enough; but it is equally true that it makes it so only when the reduction of taxes is the sole motive. That does not mean that 'business' may not be so conducted as best to keep down taxes; but it does mean that keeping down taxes is not of itself 'business'."

Before turning to the appellants' claim that these partnerships as a matter of law comply with the test in the Culbertson case, supra, for a valid partnership, we must consider the validity of the transfers of corporation stock in the Midland situation. The jury specifically found that these were not bona fide transfers. The court in its instructions on this point said:

> "The question, members of the jury, for you to determine, is whether there was a transfer of these shares as a gift or in consideration of a loan to these transferees with a

full and complete release of all dominion and control by the transferors, Emil Aslesen and Robert Lannan.

"Consider all the relevant facts which may have any bearing upon that question * * *."

The Collector's contention, as appellee, is that the jury found no such transfers had occurred in fact, and that the transfers as shown on the corporate records were shams for tax purposes. As to this, the court instructed:

"* * * These transfers, you will remember, were made in late 1943 and before the corporation was dissolved and the partnership of Midland formed in January, 1944.

"It is conceded that the stock certificates were actually made out and transferred by the appropriate officers of the corporation to these particular individuals, and it is contended that the new stock certificates were received by Eleanor Lannan, Carrie Aslesen, and on behalf of Raymond Aslesen, who was a minor, by his father."

No exception was taken to this instruction. For the purpose of this appeal it must be conceded that the mechanical aspects of the transfers under local law actually occurred, and that the only issue is whether they were bona fide transfers in which all dominion and control passed to the transferees.

 The appellants rely on Edson v. Lucas, 8 Cir., 40 F.2d 398, and Allen-West Commission Co. v. Grumbles, 8 Cir., 129 F. 287 (a 1904 decision dealing with fraudulent conveyances), for the rule that the only necessity for a valid gift of corporate stock is a transfer on the corporate records and a delivery of the new stock to the transferee. This may be correct as an abstract statement, but in both of those cases this court was vitally concerned not only with "legal title," but also with "dominion and control" of the subject matter at the time the gift was made. This concern has subsequently been repeated in Scott v. Self, 8 Cir., 208 F.2d 125, 128, and cases cited therein. For an exhaustive review of the law and cases relating to gifts inter vivos under federal income tax laws, see Apt v. Birmingham, D.C.N.D.Iowa, 89 F.Supp. 361, which is concerned particularly with corporate stock. The District Judge summarizes the requirements as follows, 89 F.Supp. at page 391:

"* * * (1) a donor competent to make the gift, (2) a donee capable of taking the gift, (3) *a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of all present and future title, dominion and control of the subject matter of the gift*, (4) the irrevocable transfer of legal title and of the dominion and control of the gift to the donee, (5) the relinquishment by the donor of dominion and control of the subject matter of the gift by delivery from the donor to the donee. * * *" (Emphasis added.)

This was the issue placed before the jury, as shown by the above-quoted portions of the instructions, and it was determined adversely to the appellants. In view of what has been said about the disputed facts, we hold that there was substantial evidence to support that finding under the rule used by this court in the Edson case, supra, 40 F.2d at pages 403–404:

"* * * 'this court will not weigh the evidence, if it is in disagreement, to find on which side it preponderates, but we may search "the record to find whether there is any substantial evidence to support the lower court's finding that as a matter of fact these gifts were made in contemplation of death." ' "

There has been considerable change in judicial thinking in regard to tax law applicable to family partnerships and the proper allocation of income therefrom for tax purposes. See Mannheimer and Mook, A Taxwise Evaluation of Family Partnerships, 32 Iowa Law Review 436. We believe the Culbertson case, 337 U.S. at page 741, 69 S.Ct. 1210 clearly shows

a rejection of the use of objective standards, and that the correct rule was announced by this court in the case of Meier v. Commissioner of Internal Revenue, 8 Cir., 199 F.2d 392, at page 395:

> "It has repeatedly been said that taxation looks to the substance of transactions, and not to their form. Aside from any question of motive, a plan, scheme or device will be judged by what it is, and not what it pretends to be. * * *"

In returning to the claimed compliance with the Culbertson case, we will treat all three partnerships together as there are no factual differences material to this dispute. To support this claim, the appellants rely on Stanchfield v. Commissioner of Internal Revenue, supra; Greenberger v. Commissioner of Internal Revenue, 7 Cir., 177 F.2d 990; and Ginsburg v. Arnold, 5 Cir., 185 F.2d 913. Their argument on these cases is factual in nature in that in each case the validity of a family partnership has been upheld subsequent to the Culbertson case.

In the Stanchfield case, 191 F.2d at page 829, reference is made to the facts that the partnership agreements were executed before business operations were started, at a time when there was no certainty of profits that would result in any tax advantage; that no step which would give notice to the world of the partnership in law or in fact was omitted; and that contribution of services is not important on questions of intent. All of this is true as claimed, but the appellants overlooked that there was a history of joint ownership and responsibility in property matters, that the capital was borrowed by both and both were personally obligated to repay, that the husband devoted his entire energies to the business, and that he received an appropriate salary for his efforts prior to the determination of partnership profits. The question there was the same as here, i. e., taking *all* of the factors into consideration, what was the intent of the parties? The Collector's claim of imminent financial success in the partnerships here is but 'one of these factors in the matter of intent. We do not believe that the facts in the Stanchfield case and the case at bar are sufficiently the same to compel us to follow that result.

In the Greenberger case we also find distinguishing facts which bear on the question of intent, the crucial issue in that case also. These would include: the devotion of the husband's entire energy to the partnership and his receiving a salary therefor prior to computation of the partnership profits; a six year lapse of time between the gift to the wife and the formation of the partnership; the gifts to the children by both parents made to trustees in behalf of the children [there was no dispute as to the validity of these gifts which were accompanied by proper gift tax returns which were not made in the gifts here involved]; the attributing of more of the income to the presence of capital because of larger operating expenses [excepting Midland here]; and little, if any, dispute as to the use of distributed profits apart from the control of the taxpayer sought to be assessed with the income.

The authority of the Ginsburg case, supra, to the factual situation here can best be disclosed by a statement in that case, 185 F.2d at page 916:

> "* * * The determining question is whether the appellants and their children really intended to carry on the business as partners. *There was no finding by the court below that they did not in good faith intend to join together as partners;* and it clearly appears that the agreement and conduct of the parties, their voluntary contribution of capital with the intention to engage in business and become liable as partners, their enjoyment of the fruits of the business in accordance with their agreed interests, the recognition by disinterested parties of the partnership business, and the good faith of the parties to the transaction,—all warrant the conclusion that the income of the business should be taxed to the owners thereof in accordance with the partner-

ship agreement." (Emphasis added.)

The court in the Ginsburg case did not have the question of good faith before it, much less a finding that the transactions involved were not bona fide.

We find, therefore, that the lower court did not err as a matter of law in refusing to direct a verdict for the appellants and in rejecting the contention that legal formalities as required by local law are determinative of the question of intent, under the Culbertson case, as to the validity of the partnerships and the transfer of corporate stock. See Wisdom v. United States, supra.

We can now turn our attention to the second error claimed by the appellants, that prejudicial error was committed by the trial court in the exclusion of evidence and in instructions to the jury, and therefore a new trial should have been granted. Appellant Lannan objects to the rejection of a bank record which he contends would show that the bank treated his individual financial statement as the joint statement of Lannan and his wife. The offered exhibit is not shown by the record. We are not advised as to its contents. We can not say the court abused its discretion in rejecting the exhibit. In any event no prejudice is shown.

The only claimed error in the instructions upon which we need comment is that pertaining to "dominion and control" in reference to the partnership funds and the gifts. In view of the complexity of this case and the instructions demanded thereby, we do not feel that the portions objected to were in error when taken in context, nor would they, if taken separately, constitute prejudicial error. The other two alleged errors have no merit and obviously were not prejudicial. The judgment of the lower court in regard to the partnerships is affirmed.

The Collector has appealed from the trial court's action in setting aside the jury verdict and directing a verdict on the issue of the taxability of income and capital gain on property held by Emil Aslesen and his wife, Carrie, as joint tenants.

In November 1943, Emil and Carrie Aslesen and Arthur Aslesen purchased real property at 509 Washington Avenue South in Minneapolis, Minnesota, which was that K. Aslesen Company had occupied for many years. Title to this property was conveyed to Arthur and Emil and Carrie as tenants in common; and the individual one-half of Emil and Carrie was deeded to them as joint tenants, and not as tenants in common, with rights of survivorship. One-half of the total purchase price was advanced by Emil. To pay for her share, Carrie executed in favor of Emil an unsecured, noninterest bearing demand note. In 1944 the property was sold and a gain realized, at which time Carrie paid the note from her share of the proceeds, and reported her share of the gain and the income in her tax returns. The Collector has since reallocated both the gain and the income to Emil. The interrogatory presented to the jury on this point asked, "Was Carrie Aslesen a bona fide purchaser of an undivided one-half interest of the property * * * within the meaning of the court's instructions?" This was answered in the negative. In directing a verdict contra to that of the jury, the trial judge said:

"* * * there is no evidence in the record which would justify a finding that there was any scheme or device carried out whereby the income of the business [K. Aslesen Co.] was to be channeled to the grantees in this real estate venture. * * * In view of the undisputed evidence, it seems incontrovertible that this deed * * * created, under the laws of the State of Minnesota, title in them as joint tenants * * *. The intent and motive of the husband under the circumstances as disclosed by the evidence seems immaterial * * *. While the taxability of income does not necessarily follow legal title to property, we have here a situation where there was no bundle of rights retained by

Emil Aslesen. He retained no control over the interest which was conveyed to his wife. * * *"

The Collector contends that this was a jury question and that there was substantial evidence to support the jury's verdict, which we interpret as a finding that there was a scheme or device whereby Emil Aslesen channeled some of his income to his wife, rather than to channel off income of K. Aslesen Company to her as the lower court implied. Specifically, this includes that it was the husband's place of business, and therefore not likely that she would be allowed to sell. No evidence was introduced to show that Carrie Aslesen participated in the determination of rent to be charged K. Aslesen Company for the use of the property or that the rent actually received was approximately that received by the prior owner. Nor was there any evidence as to the identity of the purchaser of the property from the Aslesens or the reasonableness of the consideration which resulted in the capital gain here involved. The validity of the transaction between Emil and Carrie Aslesen is attacked as no date for payment of the note was specified, no security was given for the loan from the property itself or from any other property, no interest was involved, and in view of the partnership transactions, where no notes were used, this was nothing but a sham for tax purposes and, at most, Emil made a gift of income to his wife. The taxpayers rely solely on a prior decision of this court where joint tenancy under State law was recognized under section 311 of the Revenue Act of 1928, which deals with the collection of decedent's income taxes owned by an insolvent estate from a surviving joint tenant of personal property. Irvine v. Helvering, 8 Cir., 99 F.2d 265. See also Tooley v. Commissioner of Internal Revenue, 9 Cir., 121 F.2d 350.

■ The question here is whether a joint tenancy in realty under local law must be given recognition in respect to gain realized on disposition and income resulting from joint ownership of real property, regardless of whether the transaction involved was bona fide. We believe there was substantial evidence, when the record as a whole is considered on this point, to sustain the verdict of the jury, and therefore will concern ourselves only with the correctness of the law as decided by the lower court. We agree with the contention of the taxpayer that this determination appears to conflict with the law applied in the partnership cases, in that local law is given effect in one situation and disregarded in the other. Aside from the weight of the evidence and the credibility of the witnesses, the only distinction we perceive is the type of law involved—partnership or real property. We do not feel this distinction is justified. We do not take issue with the Irvine case when read properly in regard to joint tenancy. That decision held that a surviving joint tenant takes by virtue of the joint tenancy and not as a transferee from the decedent, and that, on a failure to show insolvency at the time of creation of the joint tenancy, the survivor was not liable as a transferee under § 311 of the Revenue Act of 1928. We perceive a substantial distinction in determining tax liability on capital gain and income from jointly owned property when the joint tenancy is being attacked as a tax avoiding scheme. The Irvine case was concerned with the involuntary termination of a joint tenancy, whereas here we are concerned with the creation, duration, and voluntary termination of a joint tenancy.

We respect the determination of the trial court in regard to the law of Minnesota that a valid joint tenancy thereunder was effected in regard to the realty involved. The same determination could no doubt have been made in regard to the partnerships. But we are here concerned with federal income taxation.

We have not been referred to any cases, nor have we been able to find any, that hold that capital gain and income resulting from jointly owned realty are taxed according to the ownership thereof under State law regardless of any other consideration. The trial court held that

the motive and intent of the husband are immaterial. It is with this we disagree.

The idea that for purposes of taxation we are concerned with the substance and not the form appears to be well established, especially in regard to intra-family transactions. It has been applied to the assignment of patent license contracts, Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; partnerships as shown by decisions before and after the Culbertson case, supra; trusts, Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L. Ed. 788; gifts of personalty, Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; assignment of insurance commissions, Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; corporations, Coast Carton Co. v. Commissioner of Internal Revenue, 9 Cir., 149 F.2d 739. In Corliss v. Bowers, 281 U.S. 376, 50 S. Ct. 336, 74 L.Ed. 916, Mr. Justice Holmes said 281 U.S. at page 378, 50 S.Ct. 336:

"But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid. * * *"

In regard to the effect of local law, he says on the same page:

" * * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. *We consider the case too clear to need help from the local law of New York or from arguments based on the power of Congress to prevent escape from taxes or surtaxes by devices that easily might be applied to that end.*" (Emphasis added.)

A similar problem under different provisions of the tax law arose in the case of Watson v. Commissioner of Internal Revenue, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232, rehearing denied 345 U.S. 1003, 73 S.Ct. 1128, 97 L.Ed. 1408, wherein it was held that local realty law, which would treat growing crops as part of the realty, was immaterial in deciding wheth-er income resulting from such crops should be treated as capital gain or ordinary income. Another case in which the general nature of this problem was considered is White v. Fitzpatrick, 2 Cir., 193 F.2d 398, in which deduction of rental payments for business property of a taxpayer was disallowed when it was shown that the property was purchased by the wife with money received from the taxpayer husband as a gift the day after the wife purchased the property from the husband's former landlord.

In view of the above cited cases we conclude that the lower court's interpretation of the law on this point was in error, and that the finding of the jury should not have been set aside.

Upon the Collector's appeal, the judgment of the trial court in setting aside the verdict of the jury and granting judgment in favor of Emil Aslesen on the issue of income and capital gain on the jointly owned property is reversed. Upon the appeals of Robert Lannan and Emil Aslesen on the partnership issue, the judgments of the trial court are affirmed.