**NORTON v. JONES, Collector of Internal Revenue.**

**Civ. No. 4798.**

United States District Court, W. D. Oklahoma.

May 9, 1951.

---

Charles E. Dierker, Oklahoma City, Okl., and John L. Goode, Shawnee, Okl., for plaintiff.

Benjamin H. Pester, Special Asst. to Atty. Gen. (On brief, Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, and B. H. Pester, Spec. Assts. to Atty. Gen.), for defendant.

VAUGHT, Chief Judge.

The plaintiff seeks to recover the sums of $23,803.12, $22,403.20 and $13,032.12 for income taxes, which he alleges were erroneously, unlawfully and illegally assessed against him for the years 1943, 1944 and 1945, respectively, together with interest from date of payment.

The facts in this case and its companion case, Sam Norton, Jr. v. H. C. Jones, Collector of Internal Revenue, No. 4827–Civil, are substantially the same and are stipulated as follows:

"Sam Norton, Jr., and H. Mead Norton were born and reared in Seminole County, Oklahoma, Sam Norton, Jr., being born on the 14th day of September, 1897, and H. Mead Norton, the 10th day of October, 1901. Shortly after World War I in which Sam Norton, Jr., served, they rented a building in Shawnee which had formerly been a livery stable and opened up a garage and automobile business. At this time neither of the brothers had practically any assets. Their father was able to help them to a small amount, but it amounted to but little.

"The brothers made some headway and had accumulated a small amount of assets at the time of their respective marriages. Sam Norton, Jr., was married to Jane Barnhart, in 1919, and H. Mead Norton was married to Hazel Bohannon in 1924. At the time of the marriage neither of the respective wives was possessed of any assets.

"The brothers continued to operate their automobile business in Shawnee throughout the years and subsequently extended their field of activities and operated automobile agencies in a number of cities in Oklahoma, in practically all instances having a partner or associate. Their method of operation was that they would take an automobile agency, for instance in Pauls Valley, for the Buick automobile. They would take preferably a local man in with them as a partner and the three would then operate the business, the managing partner drawing a salary for his services, and the net profits being divided three ways, the local man being in active charge of the business, and the brothers merely keeping in touch with the business and furnishing supervision and a small measure of active participation, particularly in instances where the business was not running smoothly and it was felt that help was needed by the local man. This method of operating continued until 1929 at which time all of the businesses were incorporated under the laws of the State of Delaware. At that time eleven

corporations were formed and the stock in each instance was issued to the owners of the business on a prorata basis; however, the stock owned by Sam Norton, Jr., and H. Mead Norton was in each instance issued to Norton Brothers, Inc., a holding company, which was formed for the purpose of holding the stock owned by Sam Norton, Jr., and H. Mead Norton in said respective corporations. Seven of these corporations were dissolved on or before December 31st, 1940, at which time the four corporations involved here were dissolved.

"As of December 31st, 1940, the corporations and the ownership of their stock were, as follows:

Norton-Christy Buick Company, Oklahoma City:

| | |
|---|---|
| A. L. Christy | 1/3 |
| Norton Bros., a co-partnership composed of Sam Norton, Jr. and H. Mead Norton | 2/3 |

Norton-Elliott Motor Company, Miami, Oklahoma:

| | |
|---|---|
| Earl W. Elliott | 1/3 |
| Norton Bros., a co-partnership | 2/3 |

Chick Norton Buick Company, Tulsa, Oklahoma:

| | |
|---|---|
| Curtice Norton | 1/3 |
| Norton Bros., a co-partnership | 2/3 |

Norton-Foresee Chevrolet Company, Wewoka, Oklahoma:

| | |
|---|---|
| C. H. Foresee | 1/3 |
| Norton Bros., a co-partnership | 2/3 |

"As of January 1st, 1941, each of these four corporations had been dissolved as of December 31st, 1940 and their assets distributed to the owners of the corporate stock on the basis above set out.

"Also, as of January 1st, 1941 Sam Norton Jr. and H. Mead Norton by proper entries on the books of Norton Brothers, a co-partnership, withdrew the partnership interest in each of said business concerns, consisting of an undivided 2/3 interest in each of said four business concerns, and set same up as the undivided property of the respective partners, so that at this time the ownership of all the net assets of these four business concerns stand, as follows:

Norton-Christy Buick Company, Oklahoma City:

| | |
|---|---|
| A. L. Christy | 1/3 |
| Sam Norton, Jr. | 1/3 |
| H. Mead Norton | 1/3 |

Norton-Elliott Motor Company, Miami, Oklahoma:

| | |
|---|---|
| Earl W. Elliott | 1/3 |
| Sam Norton, Jr. | 1/3 |
| H. Mead Norton | 1/3 |

Chick Norton Buick Company, Tulsa, Oklahoma:

| | |
|---|---|
| Curtice Norton | 1/3 |
| Sam Norton, Jr. | 1/3 |
| H. Mead Norton | 1/3 |

Norton-Foresee Chevrolet Company, Wewoka, Oklahoma:

| | |
|---|---|
| C. H. Foresee | 1/3 |
| Sam Norton, Jr. | 1/3 |
| H. Mead Norton | 1/3 |

"As of January 1st, 1941, Sam Norton, Jr. made a transfer to his wife, Jane Norton, of a 30 per cent interest in the Chick Norton Buick Company, Tulsa, Oklahoma, and the same interest in the Norton-Foresee Chevrolet Company, of Wewoka, Oklahoma. On the same date, H. Mead Norton made a transfer to his wife, Hazel Norton, of a 30% interest in the Norton-Christy Buick Company, Oklahoma City, and a like interest in Norton-Elliott Motor Company, of Miami, Oklahoma. These transfers are reflected by the books of Norton Brothers, a co-partnership.

"As of January 1st, 1941, partnership agreements were entered into as to all four of these companies, reflecting the ownership of each to be as above set out, and in each instance the outside party (partner) was designated as the active manager of the business at a salary which was in each instance set out in said partnership agreement.

"Gift tax returns were timely filed, reflecting the transfer by Sam Norton, Jr. and H. Mead Norton to their respective wives, as above set out.

"As of the end of 1941, distribution of earnings of the respective partnerships was made, and the earnings distributed to the partners in accordance with the partnership agreements, said distribution being, as follows:

Norton-Christy Buick Company, Oklahoma City:

| | |
|---|---|
| A. L. Christy | $15,738.11 (including $4500 salary) |
| Sam Norton, Jr. | 11,238.08 |
| Hazel Norton | 10,114.26 |
| H. Mead Norton | 1,123.81 |

Norton-Elliott Motor Company, Miami, Oklahoma:

| | |
|---|---|
| Earl W. Elliott | $10,025.80 (including $2400 salary) |
| Sam Norton, Jr. | 7,625.79 |
| Hazel Norton | 6,863.21 |
| H. Mead Norton | 762.58 |

Chick Norton Buick Company, Tulsa, Oklahoma:

| | |
|---|---|
| Curtice Norton | $29,640.63 (including $6000 salary) |
| H. Mead Norton | 23,640.64 |
| Jane Norton | 21,276.58 |
| Sam Norton, Jr. | 2,364.06 |

Norton-Foresee Chevrolet Company, Wewoka, Oklahoma:

| | |
|---|---|
| C. H. Foresee | $12,631.42 (including $2700 salary) |
| H. Mead Norton | 9,931.42 |
| Jane Norton | 8,938.29 |
| Sam Norton, Jr. | 993.14 |

"For the year 1941 income tax returns were filed by Sam Norton, Jr. and Jane Norton, and by H. Mead Norton and Hazel Norton, reflecting the receipt by each of said taxpayers of income in the amounts above set out.

"For 1942, 1943, 1944 and 1945 returns were filed on the same basis as for 1941, and the ownership remained the same in each instance. However, the validity and effectiveness of said transfers to the respective wives of Sam Norton, Jr. and H. Mead Norton, as hereinabove set out, were challenged for said four years by the Commissioner, and deficiencies set up against the husbands for the total income received by the wives from said partnerships. Payment of said deficiency assessments were made and these suits were timely filed after claims for refund made.

"That during the year 1940, Norton Brothers, a co-partnership composed of Sam Norton, Jr. and H. Mead Norton, as above set out, received from Norton-Christy Buick Company the sum of $13,000.00, $6,500.00, or 1/2 of which amount was properly allocable to H. Mead Norton under said articles of partnership.

"That during the year 1940, Norton Brothers, a co-partnership composed of Sam Norton, Jr. and H. Mead Norton, as above set out, received from Norton-Elliott Motor Company the sum of $8,000.00, $4,000.00, or 1/2 of which amount was properly allocable to H. Mead Norton under said articles of partnership."

The evidence disclosed that Hazel Norton, in the latter part of 1940, had become dissatisfied with the setup of her husband's business and wanted some kind of division of their assets so that she would have a greater income of her own. This resulted in the change in the situation as reflected in the stipulation. The evidence further disclosed that her portion of the earnings of the partnerships in which she was interested in the years 1943, 1944 and 1945, were duly received, handled and invested by her, as she saw fit to do, and her husband, the plaintiff herein, neither had, nor exercised, any control over said earnings.

Counsel for the defendant in their brief succinctly stated the question here, as follows: "Whether during the tax years 1942 to 1945, inclusive, Hazel Norton was a business partner in the Norton-Christy Buick Company and the Norton-Elliott Motor Company, for income tax purposes, within the meaning of Section 181, of the Internal Revenue Code [26 U.S.C.A. § 181]." The court is of the opinion that this statement is correct with the exception of the phrase "for income tax purposes," which is a rather overworked and confusing phrase in these partnership controversies.

In the case of Commissioner of Internal Revenue v. Culbertson et ux., 337 U.S. 733, 753, 69 S.Ct. 1210, 1220, 93 L.Ed. 1659, in discussing a similar situation, Mr. Justice

Frankfurter in a special concurring opinion sought to clarify this question, in the following language:

" * * * It is not for this Court, by re-definition or the erection of presumptions, to amend the Internal Revenue Code so as virtually to ban partnerships composed of the members of an intimate family group.

"The present case, nevertheless, is not the first manifestation of an impression that the Tower opinion [327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670] had precisely such an effect. It seems to me important, therefore, *to make crystal clear that there is no special concept of 'partnership' for tax purposes,* while at the same time recognizing that in view of the temptations to assume a virtue that they have not for the sake of tax savings, men and women may appear in a guise *which the gimlet eye of the Tax Court is entitled to pierce.* We should leave no doubt in the minds of the Tax Court, of the Courts of Appeals, of the Treasury and of the bar that the essential holding of the Tower *case is that there is 'no reason' why the 'general rule' by which the existence of a partnership is determined 'should not apply in tax cases where the Government challenges the existence of a partnership* for tax purposes.'

"In plain English, if an arrangement among men is not an arrangement which puts them all in the same business boat, then they cannot get into the same boat merely to seek the benefits of §§ 181 and 182. *But if they are in the same business boat, although they may have varying rewards and varied responsibilities, they do not cease to be in it when the tax collector appears."* (Emphasis supplied.)

■ The real question to be determined is whether a bona fide, good faith partnership between the parties existed during the tax years involved. The Supreme Court has many times made this clear in this class of cases. In Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 537, 90 L.Ed. 670, the court said: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A.Int. Rev.Code, §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, *the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real* within the meaning of the federal revenue laws." (Emphasis supplied.)

■ It appears that the foregoing language simply means that all the facts and circumstances are to be taken into consideration by the court in determining "whether the partnership is real" and not a subterfuge for the purpose of seeking the benefits of the federal revenue law.

■ The court has carefully and with considerable interest read all the authorities cited in the briefs of the parties, has analyzed the factual situations involved in each case, and believes the cases were properly decided. But do they apply to the factual situation here? Under the language quoted from the Tower case, supra, has the test been met here? Did Hazel Norton contribute capital, services, or substantially "to the control and management of the business?" Here is a situation where a man and wife started their married life with no appreciable assets. By virtue of their years of joint effort, the husband's business prospered. Eventually the wife desired some action be taken to give her a fair share in their assets. This resulted in the husband transferring to his wife certain business interests of value that were in his name. What his purpose was is wholly immaterial, if the transfers were completed and done in good faith. Under the evidence the court is convinced that said transfers were bona fide and in good faith. A proper report was made to the government and a

gift tax paid. From that time on the interest conveyed to the wife was her own, to invest or employ in any manner and at any time she saw fit to do, whether it was the next day or a year from that date. She invested it in the new partnerships and contributed her share in the payment of the salary of the managing partner from her earnings in the business just as did each partner, including the one who drew the salary. The fact is inescapable that she contributed both capital and substantially in the control and management of the business.

The court realizes that family partnerships are subject to some suspicion if they lessen a tax burden, but suspicions and facts are two different things, and suspicions never supplant facts. If Hazel Norton chose to follow the advice of her husband, who the evidence discloses was an experienced, competent and successful business man, in embarking in these partnerships, we see nothing wrong or sinister in her judgment in so doing, even if it did lessen the taxes. Certainly one cannot be penalized for lessening a tax burden if it is legitimately accomplished. There is nothing in the evidence to justify the conclusion that the lessening of a tax burden, if a tax burden has been lessened, was the object in view. On the other hand, what has been done here between the husband and wife in the formation of these partnerships seems to the court to be a just and proper thing to do and should not be condemned.

In a recent opinion by the Court of Appeals, for the Tenth Circuit, rendered on March 10, 1951, Visintainer v. Commissioner of Internal Revenue, 187 F.2d 519, a most sensible and logical conclusion was announced as to what constitutes a gift under Oklahoma law.

The opinion by Judge Phillips in Grant v. Commissioner of Internal Revenue, 10 Cir., 150 F.2d 915, decided July, 1945, has been carefully considered but is easily distinguished from the instant case. In the Grant case the court found that the property given to the wife remained in the possession of the donor, that he handled it and the income therefrom in all respects as he did his other property, and that the gift was made for the purposes of avoiding taxes. In the case at bar, however, the husband and wife started their married life with no assets and the property accumulated during the period was the result of the efforts of both. She demanded some protection by having certain property set aside as her own so that she could feel more secure and not be subject to possible losses sustained by her husband, who was embarking upon new enterprises. The property was delivered to her, it was so carried on the books, the gift tax was paid, it was recognized by the government as a gift legally made, and thereafter the income from the property was handled by the wife in all respects as her own. The Culbertson case, supra, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, was decided in June, 1949, which, if it had been before the court in the Grant case might have led to a different conclusion.

Upon a consideration of the record the court is of the opinion that the plaintiff is entitled to recover as prayed for in his complaint.

Findings of fact, conclusions of law and a form of judgment, consistent with this opinion, may be submitted within fifteen days from this date.