YOST v. COMMISSIONER OF INTERNAL REVENUE.

No. 13363.

United States Court of Appeals,
Fifth Circuit.

June 27, 1951.

———◆———

Claude A. Hope, New York, City, for petitioner.

Louise Foster, Ellis N. Slack, A. F. Prescott, George D. Webster, Special

Assts. to the Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski Special Atty., Washington, D.C., for respondent.

Before HUTCHESON, Chief Judge, and SIBLEY and STRUM, Circuit Judges.

SIBLEY, Circuit Judge.

Before the Tax Court two so-called family partnerships were involved, one formed by a writing, dated December 31, 1940, signed by W. J. Yost and his wife Eva Yost, and by W. F. Methvin and his wife Eva Methvin, under which as the Pine Plume Lumber Company business was done during 1941 and 1942; the other by a writing dated December 31, 1942, was signed by the Yosts only, but was pursuant to a written agreement between them and the Methvins made December 18, 1942, by which the Yosts jointly agreed to buy the half-interest of the Methvins, under which last agreement business was done in the years 1943 and 1944. The Commissioner had ruled that in both partnerships Mrs. Yost was not a partner for income tax purposes and assessed all her part of the net income of the partnership for the years 1941, 1942, and 1943 to Yost. There was a net operating loss in 1944 which reduced the tax for 1943. The Tax Court sustained the Commissioner. Its decision as to the first partnership and the taxes for 1941 and 1942 was acquiesced in. This petition for review seeks to reverse the decision as to the second partnership and the profits arising under that, with consequent tax relief to Yost, by assessing half the profits to Mrs. Yost, as returned by her.

We have thus no duty to examine the reality and validity for income tax purposes of the first partnership, and assume the Tax Court was correct in holding it ineffective. We think the second partnership was substantial and real as respects Mrs. Yost according to the accepted tests and under the facts found by the Court. and

that its judgment was contrary to the law and evidence. Little need be said about the Methvins, except that they were not of kin to the Yosts; nor about the operations under the first partnership which included them.

The Tax Court finds that prior to 1940 Yost and Methvin had long worked for an Alabama corporation engaged in manufacturing and distributing lumber at wholesale, and at that date they had acquired fifty per cent each of the capital stock. The corporation in 1937 had been re-organized in bankruptcy, but by December, 1940 had recovered from its financial difficulties. Mrs. Yost had been insisting that Yost give her a share in the business, but they had thought this could not be done validly while the corporation was in financial difficulties. After the corporation debts were paid, he and Methvin discussed the matter, including also the disposition of another corporation whose stock they owned in equal amounts, the Goodwater Lumber Company, also in the lumber business. They considered, too, tax consequences. They agreed to dissolve and wind up both corporations; and that each would then transfer to his wife one-half of his interest in all the assets and form a partnership among the four, each to have a fourth-interest therein. This was done by formal but unrecorded instruments. Yost made a transfer to Mrs. Yost in consideration of $100, and other good and valuable considerations, and in consideration of her agreement to form a partnership with him, and with W. F. and Eva Methvin, to carry on the lumber business, and in consideration of his desire to provide her with an independent income. For these considerations, he does transfer, assign, and convey one-half of his interest in the assets of Pine Plume Lumber Company and Goodwater Lumber Company, which companies have been dissolved.

On the same day the Yosts and Methvins signed formal articles of partnership, each agreeing to contribute his or her fourth-interest in the assets to carry on a general lumber business, sharing equally profits and and losses; but Yost and Methvin to manage the business, receiving for their services salaries to be agreed on in addition to

their shares in the profits, to be paid before dividing the profits. The wives were to devote such time to the business as the managing partners desired and requested, and advise with them whenever called upon. There were elaborate provisions in case of death, or desire to sell or dissolve. Yost made a gift tax return showing a value of the fourth-interest he gave his wife of $38,117, and paid the tax.

The business done in Alabama, and through a branch in Atlanta, prospered. In 1941 and 1942 Yost and Methvin each were allowed a salary of $25,000, and the net income was $81,865 in 1941, and $249,-492 in 1942. Mrs. Yost, however, drew nothing in 1941 against her supposed share of $11,000 in the profits, and only $5,230 of the $56,000 due her in 1942. Yost and Methvin drew more than their shares.

In the Summer of 1942 Methvin's health failed. In the Fall, informed that he would never be able to resume active business, he gave Yost notice of retirement. Instead of following out the provisions about sale and dissolution in the partnership agreement, the four partners on December 18, 1942, all signed a new written agreement whereby the Methvins did sell and convey their shares in the assets and business of their present partnership to the Yosts, who would continue it as a partnership between themselves. The Yosts jointly agreed to pay the book value as of December 31, 1942, and $15,000 was paid down, to be increased to at least $35,000 on ascertainment of the book value. W. J. and Eva Yost, in addition to the book value, bound themselves to pay an amount equal to twenty-five per cent of the net profits derived from the sale of rough and finished lumber on hand December 31, 1942, and W. J. Yost and Eva Yost jointly and severally for themselves, their heirs and administrators, promised to pay the unpaid balance of the purchase price in equal quarterly installments over a period of two years, the first on March 1, 1943. As to all the indebtedness, W. J. Yost and Eva Yost waived all rights of exemption, and agreed to pay a reasonable attorney's fee, if one were employed to collect. Five per cent interest was promised on any default so long as unpaid. W. J. Yost and Eva Yost also bound themselves, their heirs and administrators, to pay off and discharge all obligations of the business. The Methvins agreed to execute on request separate conveyances of any real or personal property. This contract is under seal and notarial attestation.

The Methvins having thus sold out, the Yosts on December 31, 1942, entered into an agreement to continue the business under the same name, Pine Plume Lumber Company, sharing profits and losses equally; that Yost should receive for his services in excess of the time and effort of his wife, an amount to be agreed upon before the division of profits; and that all other terms of the partnership agreement entered into December 31, 1940, should remain in full force and effect. This agreement was not recorded, but notice was given to the lumber mills, and in the trade journals, and to the Bank.

Under the agreement of December 18, 1942, during a period of about two years, the Methvins were paid $157,924, and $131,-462 of old partnership liabilities were discharged, all out of the earnings and assets of the business. The Methvins then asked for notes for the balance, which they could discount. Notes were given, signed for the firm by Yost as managing partner. During 1943, Yost's salary was $20,769. Mrs. Yost drew for her own purposes $53,367. This was something over her distributable share. Mrs. Yost did no office or other work. She entertained some employees, customers, and business prospects, talked with her husband and kept posted about the business. He says she has an alert, keen mind, and was helpful in advice.

The Tax Court took its law from Culbertson v. Commissioner, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, and Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and we have no quarrel with it. The burden of it is that as a question of fact we must ascertain from all the circumstances whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." As to the first partnership it can well be concluded that a gift of property from husband to wife

was the leading intent, without any contribution by her to the partnership in property, credit, or service, intended or made. But the gift was entirely valid under the law of Alabama, their domicile, as was indeed the agreement to join in partnership. The partnership, duly published in the papers and otherwise, appears to have been valid as to creditors and between themselves, aside from the income tax question. Mrs. Yost's one-fourth interest in the business and in its profits up to December 31, 1942, belonged to her by the State law, and would have gone to her in a dissolution. When by the contract of December 18, 1942, she signed the purchase agreement with the Methvins, she assumed personal obligations to them of large amounts, and bound all she had, waiving even exemptions granted by law; and in making a new partnership agreement with her husband, she recommitted to the business enterprise not only what she had in it before, but the one-fourth interest in the assets which she was buying from the Methvins. It is true that her husband was still to manage the business, but on a salary to which she must have agreed. The business was the manufacture of lumber and selling it at wholesale. There was no personal service earning by Yost. He was paid like any other employee for what he did more than she did, by agreement. In the transaction of December 31, 1942 there was no gift either of property or earning capacity by Yost. Mrs. Yost contributed as much of capital and credit as he did, and paid him for any excess in value of his service over hers, and she drew what she was entitled to from the net profits. It seems to us a fair arrangement that might have been made between any man and woman having no family relationship. The new partnership is a different transaction from the old, and is not affected by the infirmity of the old. In 1943 Yost can not rightly be considered the true and sole owner of the whole profits over and above his salary.

The judgment of the Tax Court is reversed as to the taxes for 1943, and the cause recommitted to it for re-determination of them.