**BRITT'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13394.

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1951.

Douglas D. Felix, Miami, Fla., for petitioner.

Melva M. Graney, Ellis N. Slack, Sp. Assts. to Atty. Gen., Dept. of Justice, Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, Washington, D. C., Charles E. Lowery, Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and SIBLEY and STRUM, Circuit Judges.

STRUM, Circuit Judge.

These two consolidated petitions to review the Tax Court involve income and estate tax deficiencies determined by the Commissioner of Internal Revenue, and sustained by the Tax Court,[1] against the estate of Morgan C. Britt, deceased. Each of said deficiencies rests upon the Commissioner's determination that a family partnership, alleged to be composed of Britt, his wife and three children, is invalid for tax purposes so far as the taxpayer's wife, Susan B. Britt, is concerned.

In substance, the Tax Court found that for some years prior to 1937, decedent and his two sons jointly engaged in farming, celery being the principal crop, on a 500 acre tract in Orange County, Florida. On November 26, 1937, they incorporated as Britt & Sons, Inc., conveying to said corporation the land, farming equipment, and other assets, subject to existing liabilities, for all the stock of said corporation, of which 28% was issued to Morgan C. Britt, and 24% each to his two sons and a daughter. Decedent was president and manager of the corporation. Thereafter, through 1940, the corporation operated said tract, together with another 200 acre tract in Marion County, which it held as lessee.

At the end of 1940, the corporation leased the 500 acre tract, together with the farming machinery and equipment, to the decedent and his three children, as individuals, and the four of them also jointly leased the 200 acre tract from the owner thereof. During 1941, farming operations were conducted on the two tracts by the four individuals as a joint venture, decedent being treated as owning a 40% interest, each of the three children a 20% interest therein.

During the summer of 1941, Morgan C. Britt, his wife Susan B. Britt, and their three children, after full discussion amongst themselves, orally agreed to form a partnership to begin on January 1, 1942, for the purpose of farming the aforesaid lands, profits or losses from the operation to be allocated one-fifth to each. In discussing the proposed new partnership agreement, Morgan C. Britt asserted that his wife, Susan B. Britt, should be a partner in the farming venture because she had worked, and was still working, as hard as the others. To this, all the parties assented.

To effectuate said partnership agreement, the corporation, on December 27, 1941, executed a deed conveying to the decedent, his wife, Susan, and their three children, for a recited consideration of $10.00, a 1/5 undivided interest each in the 500 acre tract, together with the farming equipment and machinery, of the recited aggregate

1. Memorandum opinion, not officially reported.

value of $62,744.73, subject to designated liabilities aggregating the same amount. At the same time, these five individuals also .secured a joint lease on the 200 acre tract. They continued the farming operations on these two tracts through 1942, and until the death of Morgan C. Britt on July 9, 1943, as a partnership venture in which the decedent, his wife and the three children each held a 20% interest, but the agreement was never reduced to writing.

In the five-partner venture beginning January 1, 1942, T. Mark Britt, eldest son of Morgan C. Britt and Susan B. Britt, actively managed the business, as the father was ill with diabetes and unable to contribute any service other than advice from time to time. The wife, Susan B. Britt, who had previous experience in growing celery from past association with her husband and son, visited the farm several times in 1942 and 1943, to inspect the crops, and consulted with her husband and son almost daily concerning the conduct of the farming operations. The husband was frequently too ill to discuss business affairs, and on these occasions the son usually made the ultimate decision, after discussing the problem with his mother. Mrs. Britt also received and relayed to her son, Mark, frequent business messages received over the telephone from time to time, the farm being located several miles away. The two remaining members of the venture, a daughter and the other son, were rarely present, and contributed only minor services. The Commissioner does not question the status of the children as partners. He challenges only the *bona fides* of the wife's interest.

Fertilizer for growing the crops was supplied by a fertilizer firm on the credit of the five partners, for which bills were addressed to the five individuals, and all .five signed notes to the fertilizer company, giving a lien on the crops. Money for other supplies and for labor was secured on the credit of the five individuals through advances made by Morgan C. Britt Produce Company, another family corporation engaged in marketing produce, which marketed the crops in question on commission, and made advances necessary to pay growing expenses, in the same manner it dealt with other farmers engaged in similar farming enterprises.

The Britts employed an accounting firm which set up and kept a loose-leaf bookkeeping system for all their enterprises. At the end of each calendar year the debits and credits disclosed by the loose-leaves were assembled for each individual who was a participant in the farming venture during that year, on an individual ledger card under the individual's name. For the year 1941, there were four such cards kept in the names of the decedent and his three children. For the years 1942 and 1943, there were five such cards, one each for the decedent, his wife, and three children.

These ledger cards showed no contribution of capital, but entries were made showing the individual's share of profits for the current year, and for the preceding years. Thus, by entries dated June 30, 1942 (the end of decedent's reporting fiscal year), a credit of $6,102.10 appears on the individual ledger card of decedent, and credits of $3,051.04 on the cards of each of the three children, representing their respective interests in the 1941 profits. The initial entry on the wife's ledger card, dated December 31, 1942, is a credit of $6,883.33, described as "profits for year ended 12/31/42." Credits on the same date and in the same amount appear on the cards of the decedent and the three children. On each of the five cards appears a credit of $132,438.63 in 1943 "to close profit to Britt Farming Company as of 7/9/43, date of death of Morgan C. Britt, Partner," the latter entry being made at the direction of the company's auditor. From time to time after December 31, 1942, the wife drew against the credits to her ledger account, as did the others.

For the calendar year 1942, the last mentioned partnership composed of the five Britts filed a partnership return of income, showing. net income for that year of $34,-108.57, and a long term capital gain of $154.02, of which sums one-fifth, or $6,821.-71 and $30.80, respectively, was distributed to the decedent, his wife, and each of their three children. For the period January 1 to July 9, 1943, a partnership return was

also filed showing a net income of $661,-966.28 and a long term capital gain of $113.44, of which sums one-fifth, or $132,-393.26 and $22.59, respectively, was · distributed to each of the same five individuals.

The Commissioner disapproved this distribution, holding that Susan B. Britt, for tax purposes, was not a *bona fide* partner, and that her purported 20% interest was merely a colorable re-allocation to the wife of one-half the income from her husband's 40% interest in the previously existing partnership, so that 40% of the income therefrom, instead of 20%, was taxable to him. Relying on sec. 811(a) and (c) of the Internal Revenue Code, 26 U.S.C.A. § 811(a, c), the Commissioner also determined that, for estate tax ·purposes, the wife's purported 20% interest in the partnership assets should be included in Morgan C. Britt's estate, thus taxing his estate on the basis of a 40% partnership interest, instead of 20% as reported. Deficiency assessments were entered accordingly. This appeal is from the decision of the Tax Court sustaining the Commissioner.

The determinative test here is whether, as the taxpayer contends, the last partnership is a real one within the meaning of federal revenue laws, that is, "whether the parties in good faith and acting with a business purpose intended to join together in the present conduct of the partnership enterprise,"[2] or whether, as the Tax Court found, it was merely a colorable device amounting to no more than an anticipatory allocation to the wife of one-half the income from her husband's 40% interest in the existing partnership.[3]

 Due to the relationships involved, and to the consequences which sometimes flow therefrom, purported family partnership agreements should be closely, but fairly, scrutinized. The approach should be realistic, not formalistic. Members of a family are as much entitled as anyone else to form business partnerships, and such partnerships are entitled to recognition for federal tax purposes, so long as they are formed in good faith for business purposes, and not merely as a subterfuge to defeat the operation of the tax laws. There is no legal hypnosis in the label "partnership." Courts should, and will, look through the label to the facts which lie beneath. But when the facts square with the label, the partnership status should not be rejected merely because its constituent members are of the same family.

The whole subject was recently examined, and the controlling principles discussed by this court, in Batman v. Commissioner, 189 F.2d 107. It is unnecessary to repeat them at length here. Contrary, however, to the situation in the Batman case, the partnership here under consideration is entitled to recognition, not only *inter partes,* but for tax purposes as well.

The Tax Court was critical of the five-partner agreement because it found no contemporary written evidence of the wife's *bona fide* ownership of a 20% interest, nor any convincing evidence that she contributed any capital, assumed any liabilities, rendered any vital services, exercised any control, or made any *bona fide* agreement to be a partner; also because it found that the bookkeeping records were not revised from time to time to conform to changes in the personnel of the several partnerships.

Amongst the contemporary writings evidencing the wife's partnership interest are the 1942 and 1943 partnership income tax returns, in which the wife was reported as a partner; she was named as a joint lessee, along with the other four partners, in the 1942 lease of the Marion County tract, and she signed fertilizer notes as a partner in 1942 and 1943, giving a crop lien to secure the same. She also individually paid income tax on her share of the partnership income. These and other matters were lightly brushed aside by the Tax Court.

2. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Yost v. Commissioner, 5 Cir., 190 F.2d 131.

3. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L. Ed. 670; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Batman v. Commissioner, 5 Cir., 189 F. 2d 107.

But in addition to all this, there is the formal deed, duly recorded in the public records, executed by the corporation on December 27, 1941, conveying to the wife a one-fifth interest in the partnership assets. The evidence is undisputed that the wife contributed this share to the new partnership as capital just as did the four other partners whose interests in the partnership assets were created by the same deed, and which were not questioned by the Commissioner.

■ The Tax Court finds that this was not a *bona fide* contribution to capital, because the husband and children "had assets in the business substantially in excess of those transferred from the corporation and that the wife had no interest in the corporation." Apparently the additional assets referred to are the husband's and children's unwithdrawn share of former profits and undivided surplus which still remained on the books. But even if this conveyance be regarded as an outright gift from the husband to the wife of one-half of his 40% interest in the former partnership, such a gift is entitled to recognition for federal tax purposes if *bona fide,* unconditional, and final, as this transaction appears to be, the husband retaining no dominion or control over the wife's one-fifth interest. If a gift, it was complete long before the income tax question arose. Henson v. Commissioner, 5 Cir., 174 F.2d 846; Visintainer v. Commissioner, 10 Cir., 187 F.2d 519; Early v. Atkinson, 4 Cir., 175 F.2d 118. Compare Commissioner v. Sunnen, 333 U. S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

The crux of the whole matter is the intent with which the conveyance by the corporation to the five-member partnership was executed. We find in the evidence no reason to doubt that it was with the intent, and for the purpose, declared by the parties. A conclusion to the contrary would rest upon a hypothesis unsupported by the evidence considered as a whole. Indications of evasion and subterfuge are lacking. Although the husband died about eighteen months later, the conveyance does not appear to have been intended as a gift from husband to wife *causa mortis.* The extraordinary net profit realized in 1943, which is the basis for most of the taxes here in question, was due to an abnormally large crop, which combined with abnormally high market prices to produce a net profit more than ten times that of any previous year. This unprecedented situation could not possibly have been anticipated by the parties when the five-party partnership was formed.

■ We find nothing abnormal nor evasive in according proportionate proprietary recognition to a wife, along with other members of a family, in a reorganized family business enterprise which has been built up by the united efforts of the members of the family, and to which the wife contributed substantial services in the past and continued to do so after the reorganization. That the conveyance to the wife of a one-fifth interest in the partnership assets was *bona fide* and unconditional, neither the husband nor any other partner retaining any dominion or control over her share, is convincingly established by the facts. The wife was free to, and did, enjoy the fruits of the partnership to the same extent as the other partners, and she participated substantially in the control and management of the business, circumstances which were held in both the Culbertson and Tower cases, supra, to be strong indications of the genuineness and *bona fides* of a partner's status in the enterprise. We find in the evidence no indication that the wife was a "dummy" partner, a mere *alter ego* for her husband as to one-half of his former 40% interest. She was more active in the management of the new partnership than any of the other partners, save only T. Mark Britt, who was the active manager of the enterprise. Her judgment, advice, and decisions entered into the conduct of the business from day to day. Upon a fair appraisal of the evidence as a whole, a conclusion that she was a mere pseudopartner is not justified.

As to the bookkeeping records, farming is not a type of business in which elaborate records are usually kept. Nor are the members of a family, when dealing *inter se,* as likely to observe formalities as strictly as

when dealing with others. Spurious agreements, designed to evade taxes, are frequently in better form than genuine ones. The records here kept were adequate and appropriate for the purpose, and present no evidence of distortion or concealment of facts.

We conclude that this partnership agreement was not, as in the Batman case, supra, merely a subterfuge "for shoring up and expanding the family fortune at the expense of the tax collector," but that it was a *bona fide* recognition of and reward for the wife's past contributions to the success of the family efforts, and, as such, based upon an adequate consideration. But even if her interest in the partnership was an outright gift from her husband such a gift is not to be ignored for tax purposes, if *bona fide*. The deficiency assessments here in question should be set aside. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Miller v. Commissioner, 6 Cir., 183 F.2d 246; Apt. v. Birmingham, D.C., 89 F.Supp. 361. Compare Henson v. Commissioner, 5 Cir., 174 F.2d 846; Visintainer v. Commissioner, 10 Cir., 187 F.2d 519; Belcher v. Commissioner, 5 Cir., 162 F.2d 974.

In the estate tax case, we further hold that Morgan C. Britt's estate is entitled to a deduction for any income taxes due at the time of his death and thereafter paid. Petitioner's claim therefor, although not argued, was duly presented in his petition to the Tax Court.

Reversed and remanded.

SIBLEY, Circuit Judge (concurring).

I concur in the judgment and opinion but think much emphasis ought to be laid on the fact that the one fifth interest in the 500 acre tract of land and the farm implements and machinery which is in controversy, deeded to Mrs. Britt, December 27, 1941, by the corporation, had never been the property of her husband, M. C. Britt, but belonged to the corporation which deeded it to Mrs. Britt. Mr. Britt did not own 40 per cent of the stock of that corporation, but only 28 per cent, each of his three children owning 24 per cent. When they united to deed Mrs. Britt 20 per cent, and to each of themselves twenty per cent of the property, Mr. Britt yielded to her *eight* per cent, and the children each *four* per cent. He at no time passed to her twenty per cent of this property, which appears to have been the most substantial part of the assets she received when she became a partner. There is no basis for charging 20 per cent of the income, if any, to M. C. Britt as diverted from him to her.