ESTATE OF DORSEY et al.

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 14739.

United States Court of Appeals
Fifth Circuit.

June 30, 1954.

George R. Sherriff, New York City, for petitioners.

Dudley J. Godfrey, Jr., Ellis N. Slack, Sp. Asst. Attys. Gen., H. Brian Holland, Asst. Atty. Gen., Kenneth W. Gemmill, Acting Chief Counsel, John M. Morawski, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

This is another family partnership income tax case. The question presented is whether or not the Tax Court erred in finding that Katherine Dorsey was not a partner for Federal Income Tax purposes in the partnerships conducted as Dorsey Brothers during the years 1944, 1945 and 1946.

The evidential facts are not in controversy. A partnership known as Dorsey Brothers was first organized in 1911, by Claude E. Dorsey, Sr. (hereinafter also referred to as "Mr. Dorsey") and his brother H. A. Dorsey for the conduct of a Ford automobile agency with establishments at Elba and Enterprise, Alabama. About 1926 that partnership was dissolved and H. A. Dorsey continued the agency business at Enterprise and Mr. Dorsey, individually, continued the business at Elba. As an adjunct of the business, Mr. Dorsey started the manufacture of stump pullers, skidders, stump dozers and later on the manufacture of truck trailers and semi-trailers. He had three places of business at Elba: the automobile agency, which was changed from a Ford to a Chevrolet Agency in 1930, was located in the "Square"; the body shop was about a block away; and the machine shop about two blocks away. In 1944 the machine shop and body shop were consolidated in one place.

The business was incorporated in 1932, the stock being issued as follows: Claude E. Dorsey, Sr., five shares; Gladys Dorsey (his wife), forty-five shares; Claude E. Dorsey, Jr. (his son), fifty shares. Title to most of the real estate and tangible property used by the corporation remained, however, in the name of Mr. Dorsey.

Claude, Mr. Dorsey's only child, began part time employment with the business at Elba in April, 1936, while he was still going to school. At about the time Claude finished school in 1937, the corporation was dissolved and a partnership was formed with Mr. and Mrs. Dorsey and Claude as equal partners, known as "Dorsey Brothers". The property and business of the corporation and the property standing in the name of Mr. Dorsey were transferred to the partnership. Since then, Claude has devoted his entire time to the business.

Claude was married to his wife, Katherine, in 1936, when she was 21 years old, and thereafter they had one child. Katherine's education consisted of completion of high school and two years of college. Her only business experience prior to 1944 was as office manager of the livestock market at Elba, Alabama.

Mr. Dorsey had extensive farming operations, which consumed much of his time, and discussions relating to the business of Dorsey Brothers usually took place at noon and in the evenings, when Katherine would be present, take part in the discussions and her opinion would be asked as to various matters. Her participation in the business of Dorsey Brothers was confined to the role she played in these discussions, and the Tax Court found that it reflected the interest of a wife rather than that of a business partner in her husband's affairs.

In 1943 Dorsey Brothers had an opportunity to obtain Government contracts in connection with the war effort. Dorsey Brothers lacked sufficient capital of its own to execute these contracts. It was able to borrow from Federal Government sources in 1943 about $40,000.00. In the fall of that year, Mr. Dorsey and his attorney went to the Federal Reserve Bank in Atlanta to discuss a loan of $1,000,000.00. Dorsey Brothers then had assets of about $300,000.00 and there was some indication that the Federal Reserve Bank authorities might regard this amount as insufficient to support a loan of that size. Representatives of the Federal Reserve Bank suggested raising more capital through incorporation of Dorsey Brothers or through addition of another partner.

Aside from their partnership interests, Mrs. Dorsey and Claude had no assets, but Mr. Dorsey's farm properties were worth about $50,000.00, and Katherine owned a separate estate valued at $26,000.00. Under Alabama law, Katherine could not become surety for the debts of the partnership so long as her husband was a partner and she was not. Claude had, theretofore, suggested to his father that Katherine should be made a partner in Dorsey Brothers. On several occasions prior to the foregoing trip to Atlanta, Mr. Dorsey and his attorney had discussed admission of Katherine as a partner. They discussed it again at the time of that trip and it was discussed in Atlanta with the representative of the Federal Reserve Bank. The question of the

tax effect of Katherine's admission as a partner in Dorsey Brothers was not discussed with the attorney but Mr. Dorsey did discuss it with his accountant, who pointed out to him "that he would have a tax advantage". The attorney explained to Katherine the danger of her losing her separate estate if she became a partner as she would be liable for losses.

Katherine was admitted as a partner by oral agreement at the beginning of 1944. The accountant was directed to make the necessary entries on the business books of the partnership showing gifts to Katherine of equal proportions of the capital interests of the partnership so that she would be an equal one-fourth partner. These entries indicated a gift by each of the other three partners of $19,273.72 of his or her partnership capital and a gift to Katherine of a capital interest in the partnership amounting to $57,821.16. Federal Gift Tax returns were filed on or about March 23, 1944 reflecting these gifts. After the beginning of January, the books of Dorsey Brothers carried capital accounts for Mr. and Mrs. Dorsey, Claude and Katherine, one-quarter of the profits of the business being credited to each at the end of the year.

Shortly after the beginning of 1944, the First Farmers & Merchants National Bank of Troy, Alabama, the Federal Reserve Bank, the R.F.C., and the Ordnance Department were advised that Katherine was a partner in Dorsey Brothers and they were informed as to the assets held by her in her name. The First Farmers Bank was also advised that Katherine was authorized to sign checks drawing on business funds.

Individual financial statements, including Katherine's, were submitted to the First Farmers Bank and Smaller War Plants Corporation, a subsidiary of the R.F.C., in connection with the loan being sought by Dorsey Brothers. There resulted a line of credit in the amount of $700,000.00, although $1,000,000.00 had been sought. The loan agreement, dated November 21, 1944, recited that Kather-

ine was one of the partners. Under the loan agreement, the partners were limited to withdrawals aggregating $24,000.00 other than for payment of taxes. All partners, including Katherine, executed a mortgage on the plant, machinery and equipment of the partnership to secure the indebtedness. The loan had "R.F.C. security" behind it and was made primarily on the strength of such "security". The property held by Katherine in her name at that time was not a significant factor in the procurement or grant of this loan.

Subsequent to January 1, 1944, Dorsey Brothers executed numerous documents in which Katherine was referred to and to which she affixed her signature as one of the partners. Katherine had authority to sign checks drawn in behalf of Dorsey Brothers and from time to time, when Mr. Dorsey or Claude or J. V. Wright, an employee, were not available, Katherine did sign checks for the business, but this was a routine matter in which she exercised no discretion.

Mr. Dorsey died suddenly of a heart attack on March 22, 1945. Mrs. Dorsey and Claude were the only heirs and next of kin. No part of the interest in the business shown by the business books to be owned by Katherine was included as an asset of Mr. Dorsey's estate. It was promptly decided that the business should be continued in partnership form; Mr. Dorsey's interest in the business to be divided equally between Mrs. Dorsey and Claude; Katherine's position as a partner to remain unchanged; and J. V. Wright, for many years a trusted employee of the business and then its sales manager, to be admitted as a partner. A draft of a partnership agreement was drawn up and tentatively approved by the creditors of the business. The partnership agreement was executed on March 27, 1945 by Mrs. Dorsey, Claude, Katherine and J. V. Wright. Katherine contributed to the new partnership the amount standing to her capital account in the old partnership. Mrs. Dorsey and Claude each contributed their capital accounts in the old partnership plus the one-half capital interest each had inherited from Mr. Dorsey's estate. J. V. Wright contributed no capital. Profits and losses were agreed to be shared as follows: Mrs. Dorsey 32½%, Claude 32½%, Katherine 25%, and J. V. Wright 10%.

Copies of the new partnership agreement were given to creditors and to the various Government departments with which the partnership did business. The property of the old partnership was conveyed in writing by Mrs. Dorsey, Claude and Katherine to the new partnership. Each of the partners, including Katherine, unconditionally guaranteed and became personally liable for the loans. That guarantee agreement is still in force and effect, though the business is now incorporated.

In the prior partnership, Mr. Dorsey and Claude each drew $12,000.00 a year salary. In the subsequent partnership, Claude was to receive $12,000.00 per year and Mrs. Dorsey and Mr. Wright $6,000.00 a year each. Katherine was not paid a salary. Other than amounts drawn to pay her income taxes and an amount of $3,750.00 used to buy a bond, withdrawals from the business by Katherine were of a comparatively minor character and were largely for personal and living expenses. Most of the living expenses of Claude and his family were charged to Claude's account during the existence of the partnership. During the years in issue, Katherine reported no income other than that of Dorsey Brothers attributed to her.

Dorsey Brothers was discontinued as a partnership by April 1, 1946 and the business was continued after that date in the form of three corporations, named Dorsey Brothers Chevrolet, Inc., Dorsey Trailers, Inc. and Elba Investment Company. All of the assets of the partnerships were transferred to one or more of these corporations. In 1948 Elba Investment Company merged with Dorsey Trailers, Inc.

In the early part of 1946 there was a transfer on the books of Dorsey Brothers of $30,000.00 from the investment ac-

count of Katherine to the investment account of Claude. This transfer was made at Claude's direction and without Katherine's knowledge or assent and was not a loan or gift by her to Claude. Thereafter at sometime prior to April, 1946, $9,110.-93 was transferred on the business books from Claude's investment account to Katherine's investment account. Katherine was no more familiar with this transfer than she had been with the earlier reduction of her book interest by $30,000.00. The amounts in the drawing accounts on the business books had become disproportionate because of the substantial withdrawals by Claude and the other partners and the smaller withdrawals by Katherine for purposes other than payment of income taxes. These transfers were made by Claude in order to even up the accounts so that Katherine would receive the same proportion of stock in the new corporations as her original capital interest in the partnership.

Katherine became Secretary-Treasurer of one or more of the corporations formed to succeed the partnerships but received no salary. Since incorporation, she has signed payroll checks, payrolls and other documents. The stock of all of the owners, including Katherine's, has been deposited with the First Farmers Bank to secure the continuing indebtedness. No dividends have been paid on the stock because loan terms prohibited payment of dividends until the indebtedness had been paid and profits after taxes are applied toward reduction of the indebtedness.

In 1945 there were labor difficulties at the plant as a result of charges filed. The dispute was arbitrated and there resulted an award against the business of about $60,000.00. It was felt that the business could not stand payment of so large an award, and it was decided to attempt to make a settlement with each one of the employees involved, individually,

of whom there were between 50 and 75. After much investigation as to what extent each of the employees had been employed elsewhere during the period of the supposed lay-off and contact with the employees individually, the claims were settled so that, instead of paying about $60,000.00 under the arbitration award, an aggregate sum of only about $10,000.00 was paid. Of all the persons engaged in the effort to reduce and settle the claims of these employees, the Company's attorney was the most active, Claude was also active and Mrs. Dorsey and Katherine participated to some extent.

There was a strike at the plant of Dorsey Trailers in October or November of 1946, causing the plant to be closed for several months. The union filed charges with the National Labor Relations Board and subsequently the matter was reviewed in court, see 5 Cir., 179 F.2d 589. In the course of this dispute, consultations and discussions were held with various persons. At some of these Katherine was present and expressed her views. The services performed by Katherine in both partnerships were largely of an advisory nature.

The Commissioner held that Katherine was not a bona fide partner in either partnership and taxed her share to the other partners. The Tax Court sustained the Commissioner's determination.

This is but one of a long series of cases arising since the Supreme Court attempted to lay the question to rest in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, in which this Court and the Tax Court have differed in their emphasis on the various tests or in their concepts of what constitutes a partnership valid for tax purposes.[1] So much misunderstanding and litigation over a comparatively simple and already settled legal proposition would seem to be unnecessary. We

---

1. See: Yost v. Commissioner, 5 Cir., 190 F.2d 131; Alexander v. Commissioner, 5 Cir., 194 F.2d 921; Culbertson v. Commissioner, 5 Cir., 194 F.2d 581; Seabrook v. Commissioner, 5 Cir., 196 F.2d 322; Tomlinson v. Commissioner, 5 Cir., 199 F.2d 674; Turner v. Commissioner, 5 Cir., 199 F.2d 913; Marcus v. Commissioner, 5 Cir., 201 F.2d 850.

again attempt to restate the net effect of the Culbertson decision as we understand it.

It is no longer essential that the parties in question contribute to the partnership either vital services or capital originating with him. If, however, such partner was in no way responsible for the production of income during the tax year, then the partnership is not real within the meaning of the federal revenue laws, for it is fundamental that "income must be taxed to him who earns it." The partner must contribute one or both of the ingredients of income—capital or services. The ultimate question for decision is the reality vel non of the partnership for tax purposes. That depends upon "whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both." Their intention in that respect is a matter of fact to be determined from such circumstances as their agreement, their conduct in execution of the agreement, the relationship of the parties, their contributions either in services or in capital, and their actual control of the income. If there is room for an honest difference of opinion as to whether the services or capital furnished by the partner are of sufficient importance to justify his inclusion in the partnership, then the court may not substitute its judgment for that of the parties. Where capital is a material income-producing factor, the fact that the capital contributed by a partner is gift capital does not preclude its recognition as a genuine capital contribution, though the family relationship calls for careful scrutiny as to whether the gift is itself genuine and irrevocable. In short, a partnership valid under state law is valid for tax purposes if it is genuine and not a mere sham, and if the partner in question is in part responsible for the production of income during the tax year.

When it came to apply the standards laid down by the Supreme Court in the Culbertson case, supra, with which it coupled the Tower (Commissioner of Internal Revenue v. Tower), 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Lusthaus (Lusthaus v. Commissioner of Internal Revenue), 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, cases, the Tax Court found that Katherine did not render services to the business which were significant in its operation, that her personal assets were not a factor inducing her admission to the partnership, and that there was not such a gift of capital as to entitle Katherine to treatment as a partner for income tax purposes. This last conclusion it reached because Claude exercised dominion and control over her partnership interest without her knowledge or assent; because of her comparatively minor withdrawals of profits from the business; and because Katherine herself was not called as a witness by petitioners.

Pretermitting the materiality of Katherine's services to the business and of the liability of her separate estate for the partnership indebtedness, we are of the clear opinion that capital was a material income-producing factor in the partnership business; that the gifts to Katherine of $57,821.00, of which $19,273.72 came from each of the other three partners, Mr. Dorsey, Mrs. Dorsey and Claude, were genuine and irrevocable; and that thereafter Katherine owned her part of the business.

It is true that Claude took more liberties than the law allows in transferring from Katherine's account to his account of $30,000.00 and, when this was found to be too much, crediting back to Katherine $9,110.93, all to place the accounts in balance so that Katherine would receive in stock in the newly formed corporations her original proportion of the business. It must be remembered, however, that Claude was only one of the donors to Katherine and that Mr. and Mrs. Dorsey had each given her the same amount that she received from Claude. There was never the slightest action on the part of either of them or of Mr. Dorsey's estate after his death to indicate that their gifts to Katherine were not genuine and irrevocable. Claude's action seems to us

more referable to the conduct assumed by a husband as head of the household than to any belief that he had not really and truly given Katherine the $19,273.72. Of more significance, it seems to us, is the fact that Katherine received her pro rata share of stock on incorporation, which she still owns.

As to withdrawals from the business, most of the living expenses were charged to Claude's account and there were few occasions for Katherine to make withdrawals. Her withdrawals were not limited because of the exercise of dominion by any other partner. She had the power to withdraw her earnings except as that power was limited by the loan agreements. On a number of occasions, she did make some, though minor, withdrawals. Katherine's failure to testify certainly does not establish that the gifts to her were invalid.

 In a footnote to its opinion, the Tax Court calls attention that the record fails to disclose that there was any conveyance to Katherine of any interest in the partnership real estate. In Alabama, however, " * * * the interest in lands owned by the partnership, if needs be for the payment of debts of the partnership, or to equalize the interest of the several partners, will be treated as personalty, with all the incidents of personal property." Sealy v. Lake, 243 Ala. 396, 10 So.2d 364, 366. Further, when the new partnership was formed after Mr. Dorsey's death in March, 1945, the real and personal property of the old partnership was formally conveyed to the new partnership, and Katherine was recognized in that conveyance as one of the surviving partners of the old partnership and signed as such.

 When it is recognized that the gifts were valid and, hence, that Katherine owned her capital interest in the partnerships, and that circumstance is coupled with such services as she did render, and with the subjection of her separate estate to liability for the partnership debts, and when it is not disputed that Katherine continues as the owner of the same proportionate interest in the corporations and continues personally liable for the loans made to the partnership and her shares of stock remain pledged as collateral therefor, it seems to us that the uncontroverted facts, heretofore set forth at some length, plainly demonstrate that Katherine was admitted in good faith as a partner as of January 1, 1944, and continued as such until the partnership was dissolved by Mr. Dorsey's death in March, 1945, and that she then became a member of the new partnership and continued as such until it was finally dissolved upon conversion into the corporate form.

The decisions of the Tax Court are, therefore, reversed and the cases remanded for entry of decisions in favor of the taxpayers and to recompute any deficiencies accordingly.