Para Pierce ALDRICH, Plaintiff,
v.
Chester A. USRY, Defendant.
Civ. A. No. 2249.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 7, 1962.

Victor A. Sachse, Baton Rouge, La., for plaintiff.

Jerome J. Reso, Jr., Tax Division, Department of Justice, for defendant.

WEST, District Judge.

This is a suit to recover estate taxes alleged to have been paid by plaintiff taxpayer, Mrs. Para Pierce Aldrich, following the death of her husband, Walter R. Aldrich. It is plaintiff's contention that when she filed the Federal estate tax return following her husband's death, there was erroneously included therein, as a part of his estate, the value of an undivided two-thirds interest in the firm of W. R. Aldrich & Company. She contends that in truth and in fact, decedent, as a partner in the company, owned only a one-third interest, and she, plaintiff, as a partner, owned the other one-third interest as her own separate and paraphernal property, and that hence, this latter one-third interest should not have been included as a part of decedent's estate.

W. R. Aldrich & Company was an ordinary partnership engaged primarily in the road building business in the State of Louisiana. This company, according to information gleaned from the 1944 partnership income tax return filed in the record of this case, was organized in 1932 with W. R. Aldrich, of Baton Rouge, Louisiana, and Forcum-James Construction Company, of Dyersburg, Tennessee, as partners. The business operated as such until January 1, 1945, when, by sale and chattel mortgage dated June 30, 1945, but by its terms, retroactive to January 1, 1945, Forcum-James Construction Company sold what appears to be all of its interest in the partnership of W. R. Aldrich & Company to:

"Walter R. Aldrich, married to Para Pierce Aldrich, with whom he is now living; Mrs. Para Pierce Aldrich, born Pierce, wife of the said Walter R. Aldrich, here appearing and buying with her own sole and separate paraphernal funds, under her separate control, duly authorized to so appear by the said Walter R. Aldrich, and Lee A. Holland, married but once and then to Ruby McKee, with whom he is now living, all residents of lawful age of East Baton Rouge Parish, Louisiana."

The consideration for this sale was the sum of $204,028, of which amount $44,028 was paid in cash, and for the balance, two notes of $80,000 each were given, said notes being signed by Walter R. Aldrich, Para Pierce Aldrich, and Lee A. Holland, as makers.

This apparently amounted to a sale of one-half interest in the company, as it appears from the record that W. R. Aldrich & Company, prior to this transfer, was owned one-half by W. R. Aldrich, and one-half by Forcum-James Construction Company. Thereafter, according to complainant's contention, a new partnership was formed between W. R. Aldrich, his wife, Para Pierce Aldrich, who is the complainant herein, and Lee A. Holland, with each of them owning an undivided one-third interest in the new partnership, which continued to operate as W. R. Aldrich & Company. The first evidence of this partnership appears in a letter addressed to the City National Bank of Baton Rouge, Louisiana, which read as follows:

"June 27, 1945
"City National Bank
Baton Rouge, Louisiana
"Dear Sirs:
Please be advised that the Forcum-James Construction Company of Dyersburg, Tennessee, has withdrawn from W. R. Aldrich & Company of Baton Rouge, Louisiana, a partnership engaged in the general contracting business, of which it has been a member for a number of years. The withdrawal is effective as of the beginning of this year.
"New partners have been admitted to W. R. Aldrich & Company, so that the new firm consists of W. R. Aldrich, Para Pierce Aldrich, and L. A. Holland, who will operate under the firm name of W. R. Aldrich & Company and have assumed all of the assets and liabilities of the firm, except any adjustment that may arise under re-negotiation of 1944 business by the U. S. Government.
"Forcum-James Construction Company will accordingly not be respon-

sible for any obligations of W. R. Aldrich & Company, except for its share of the re-negotiation, if any, of 1944 business."

There was never any written articles of partnership entered into between Walter R. Aldrich, Para Pierce Aldrich, and Lee A. Holland, nor was there any formal or written act of donation executed by Walter R. Aldrich in connection with the one-third interest in the company allegedly transferred to his wife, Para Pierce Aldrich. At the same time, the sale and chattel mortgage was entered into, certain real estate was also purchased by authentic act, by W. R. Aldrich & Company, wherein the company was described as follows:

"W. R. ALDRICH & COMPANY, an ordinary partnership composed of Walter R. Aldrich, married to Para Pierce, with whom he is now living; Mrs. Para Pierce Aldrich born Pierce, the wife of the said Walter R. Aldrich, herein appearing to aid and authorize his said wife, who buys with her own sole and separate funds, under her separate control, and Lee A. Holland, married but once and then to Ruby McKee, with whom he is now living, all residents of lawful age of East Baton Rouge Parish, Louisiana."

At the same time these sales were entered into, W. R. Aldrich & Company borrowed the sum of $60,000, and a note, payable to "Future Holder or Holders", in the amount of $60,000 was given, signed by W. R. Aldrich, Para Pierce Aldrich, and Lee A. Holland, as makers, and secured by collateral mortgage on the real estate purchased by the company on the same day.

The books of W. R. Aldrich & Company were audited by the Certified Public Accounting firm of Seidman and Seidman each year, following the alleged formation of this new partnership, and in each report of audit, it is stated by these auditors that the partnership is composed of W. R. Aldrich, Para Pierce Aldrich, and Lee A. Holland. It is stated

that the interest of W. R. Aldrich and Para Pierce Aldrich was acquired by contributing the assets received from the dissolution of the former partnership composed of W. R. Aldrich and Forcum-James Construction Company, of which said partnership Mrs. Para Pierce Aldrich was admittedly not a partner, and that the interest of Lee A. Holland was acquired by his contributing $42,594 in cash to the new partnership.

It is further to be noted that in each of these audit reports from 1945 to the time of the death of Mr. Aldrich in 1951, under the analysis of the capital accounts, when setting forth the original capital contribution, the net income from the partnership, the additional capital contributed after inception of the partnership, the drawings of the partners, and the balance of the capital account of the partners, L. A. Holland's account is shown separately in one column, while in the other column, under the heading "W. R. and Para P. Aldrich", the purported individual accounts of Walter R. Aldrich and Para P. Aldrich are simply lumped together as one figure. There is no breakdown or separation of their accounts to show their individual capital accounts, drawings, net earnings, contributions to capital, etc. No explanation is given for such a treatment of what is now alleged to be two separate accounts. An examination of the partnership income tax returns for 1945 through 1951 does show W. R. Aldrich, Para Pierce Aldrich, and L. A. Holland listed as partners. However, the personal income tax returns of Mr. and Mrs. Aldrich prior to 1945 reported all income received as community income, and after 1948, when the law was amended to allow the filing of joint returns by spouses, their personal income tax returns still showed no separate income to Mrs. Aldrich, but showed her sharing in the total income only to the extent of a community one-half. When W. R. Aldrich died in 1951, his succession was duly opened in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana. Included in the sworn

itemized list of assets belonging to the estate of W. R. Aldrich was an undivided two-thirds interest in the partnership of W. R. Aldrich & Company. This two-thirds interest was listed as community property. By judgment rendered by that Court on May 11, 1951, Mrs. Aldrich was recognized as the surviving spouse and sole heir of W. R. Aldrich, and sent into possession of, among other things, this two-thirds interest in the firm of W. R. Aldrich & Company, and State inheritance taxes were paid accordingly. This treatment in the succession proceedings of the two-thirds partnership interest has never been changed nor corrected by plaintiff. Later, when Mrs. Aldrich sold her interest in the partnership to L. A. Holland, the sales agreement described her two-thirds interest in the partnership, which she was conveying to Mr. Holland, as having been acquired by her "as widow in community of W. R. Aldrich and by inheritance from him * * *."

On April 28, 1952, following the opening of the succession of W. R. Aldrich, the required Federal estate tax returns were filed by Para Pierce Aldrich, in which the entire two-thirds interest in the partnership was listed as community property and as an asset of the estate of W. R. Aldrich, and Federal estate taxes in the amount of $63,749.72 were paid thereon. Thereafter, on September 22, 1953, a deficiency assessment was levied by the Commissioner of Internal Revenue, (now the District Director of Internal Revenue), in the sum of $22,412.-62, which was immediately paid. A claim for refund was filed by plaintiff with the Commissioner of Internal Revenue on January 10, 1955, which was rejected on September 5, 1956. This claim for refund alleged, among other things, that plaintiff's one-third partnership interest in the firm of W. R. Aldrich & Company had inadvertently and erroneously been included on the estate tax return as a part of decedent's estate. A request for reconsideration was filed by plaintiff on August 17, 1957. This request was granted by the District Di-

rector of Internal Revenue, and there was ultimately approved a refund of $7,100.21, plus $1,874.03 interest. This refund related only to legal and accounting expenses and did not involve the partnership interest here at issue.

The portion of the claim for refund which was disallowed was Mrs. Aldrich's claim for refund of $45,172.10, plus interest, for estate taxes allegedly erroneously paid on the grounds that Mr. Aldrich owned only, as community property, a one-third interest in the partnership of W. R. Aldrich & Company, and that the other one-third interest was, and always had been, her separate property. In other words, she now contends that she was a bona fide partner for tax purposes in W. R. Aldrich & Company to the extent of a one-third interest, and that hence, the value of this one third interest was improperly included in the estate of W. R. Aldrich when his succession was opened, and was improperly included in the list of assets belonging to decedent's estate when the Federal estate tax return was filed. This refund was refused and this present suit followed.

The Government now contends (1) that no partnership could exist between W. R. Aldrich and Para Pierce Aldrich because under Louisiana law, a husband and wife may not contract, one with the other; (2) that Mrs. Para Pierce Aldrich could not have purchased a one-third interest in the partnership because of the fact that the evidence shows clearly that she had no separate funds with which to do so; (3) that the one-third interest could not have been acquired by her by gift from W. R. Aldrich because admittedly there was no authentic act evidencing a gift as required by Louisiana law; and (4) that Mrs. Aldrich fails to meet the requirements under Federal law of a partner for Federal tax purposes.

While there is much authority for the proposition that under Louisiana law a husband and wife may not validly transfer their property, one to the other, nor may they form a valid husband and wife partnership, nevertheless, it is well

settled that for Federal income tax purposes, the validity of such a partnership must be determined not by the law of Louisiana, but by Federal law. Revenue Ruling 58–243; CCH 3922.78; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Britt's Estate v. Commissioner of Internal Revenue, 5 Cir., 190 F.2d 946. The Government now says, however, that this applies only to Federal *income* tax matters and not to Federal *estate* tax matters. I fail to see any reason for such a distinction. The rationale of the Tower case is certainly as applicable to estate taxes as it is to income taxes. In Willis B. Anderson, 6 T.C. 956, 961–962, it is stated: "Furthermore, it has been decided in numerous cases that a bona fide partnership between husband and wife will be recognized under *Federal Revenue Laws,* despite provisions of state law to the contrary." (Emphasis added)

Since I have concluded that there may, despite Louisiana law to the contrary, be a valid husband and wife partnership for Federal taxing purposes, it is necessary to inquire as to the essential elements of such a family partnership.

In Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, the Supreme Court stated that the ultimate question for determination is whether the partnership is real within the meaning of the Federal Revenue Laws. The question is whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses. And their intention in this respect must be determined from their conduct as well as their apparent intention as disclosed by a so-called declaration of partnership. The question is not only whether sufficient services were rendered or capital contributed to meet some objective standard, but rather, after considering all of the facts, such as the partnership agreement, the conduct of the parties in the execution of its provisions, the testimony of disinterested witnesses, the respective abilities and capital contributions of the parties, and the actual control of income, the parties, in good faith, actually intended to join together as actual, bona fide partners for the conduct of the business.

Family partnerships must be closely scrutinized for they can, and often are, used as a convenient vehicle with which to shift tax incidence by paper changes of ownership without in any way disturbing one's dominion and control over the income or the purpose for which the income is used. With these criteria in mind, we turn to an examination of the evidence in this case as it pertains to intent of the parties to actually become partners.

It is significant to note that no real disinterested witnesses were produced by plaintiff to establish the existence of this partnership. The only witnesses produced were Mrs. Para Pierce Aldrich, Mr. Lee A. Holland, and Everett Wilson, the Certified Public Accountant who prepared various audits and returns for W. R. Aldrich & Company and for Mrs. Para Pierce Aldrich.

The testimony of Mr. Wilson served only to identify the various tax returns and audits previously referred to herein. His testimony did no more than reiterate what those records stated, and that was that Mrs. Aldrich appeared on the records as a partner. But such statements in the returns and audits did not, of themselves, make her a partner.

The testimony of Mr. L. A. Holland established the amount of contribution made by him to the partnership in the beginning, and it established that Mrs. Aldrich made no cash contribution to the partnership. It further established the fact that he and Mr. Aldrich, as partners, each drew a nominal salary of about $60 per week, in order to make them eligible for workmen's compensation insurance benefits. Mrs. Aldrich drew no salary. The only testimony elicited from him concerning Mrs. Aldrich's participation in the business was as follows:

"Q. Do you know whether or not Mr. Aldrich discussed the com-

pany's business with Mrs. Aldrich?

"A.  Very much so, because most of the time that I was there was on business.  Mr. Aldrich discussed the business quite a bit with Mrs. Aldrich.

"Q.  Did you also have such discussions?

"A.  On numerous occasions I would discuss with Mrs. Aldrich business, even if Mr. Aldrich would be sick and not able to discuss the business. I would discuss with her things that we should or should not do."

That is *all* of the testimony elicited from Mr. Holland with regard to Mrs. Aldrich's participation in this business.

The only other witness was Mrs. Aldrich herself.  With regard to her participation in the business, she testified as follows:

"Q.  Did you take part in the discussion leading up to the decision to terminate the partnership so far as Forcum-James was concerned?

"A.  Well, I couldn't say that I did. It just came to the point where it was really a happier situation for the two companies. It wasn't necessary; Mr. Aldrich felt that he could take care of his company alone, that is, handle his own business. And he found that since he was in Louisiana, it was much better that he do that.

"Q.  Did Mr. Aldrich discuss that with you before he made his decision?

"A.  Yes, he did.  He discussed it for probably six months or a year before it happened probably.  He gave long thought to it before it was done.

"Q.  And did his thought involve discussions with you as to eliciting your opinion on the matter?

"A.  Well, Mr. Aldrich had a mind of his own and he usually had his mind made up; he knew what he wanted to do, and usually we were in accord with whatever he wanted to do, because we thought alike, and were so close that we never kept anything from each other.

"Q.  Was it his practice to discuss business problems with you, Mrs. Aldrich?

"A.  Usually Mr. Aldrich spent the evening meal and for hours afterwards talking about his daily business.  Mr. Aldrich was very open about his daily business.  He never kept anything from me * * * that is, anything that I knew he never kept from me as far as I know.  I knew the business. It was open to me at all times.

"Q.  Was this your practice and his practice before 1945?

"A.  I beg pardon.

"Q.  Was this practice which you have described, did it prevail before 1945 as well as after 1945?

"A.  I don't know whether I understand your question.

"Q.  Well, you say it was Mr. Aldrich's practice that he usually discussed the day's business with you.

"A.  Oh, yes.

"Q.  Before 1945?

"A.  Yes, in fact, ever since we were married the business was wide open and I knew just about as much as he did about the business, because I knew just what he was doing and he talked about his business at all times; even before I was a partner in the business.

"Q.  Did he continue to do that after you became a partner?

"A.  Not any more so, because it couldn't have been much more

than he was talking to me about it. He was a man who lived his business and talked about his business at all times. He never got away from his business. He never went on vacation or played. Whenever he left home it was because of sickness or necessity. He was a man that spent most of his time or all of his time with his business. The business was his life.

"Q. Is it fair to say that you and Mr. Aldrich daily discussed the business affairs of the company?

"A. Well, I always worked for Mr. Aldrich's best interest. I never interfered with anything that he wanted to do in a business way.

"Q. But did he discuss the business with you daily?

"A. That's right. That's right.

"Q. Did you ever take part in decisions about the business, for example, where the business should do its banking?

"A. Well, as far as I can say, I did not, other than that I made suggestions and if he felt they were good suggestions, why he followed them; if he didn't, he used his own judgment.

"Q. Did you discuss with him specifically where the firm should bank, whether the company should bank with one bank or another bank in Baton Rouge?

"A. He talked to me about moving his banking to another bank and I definitely told him I thought it was a mistake because the bank where he had his business had been very kind to him when he needed money, and I felt that one of his best friends he had was at that bank. And on the morning Mr. Aldrich passed away, the president of the bank said he had lost the best friend that he had. Mr. Aldrich never regretted that he didn't move his banking business.

"Q. I take it that you had no specific duties to perform in connection with the company.

"A. Other than take care of him and his health.

"Q. Did he have any financial help from you in beginning this contracting business?

"A. Oh, no."

It was stipulated between counsel for both parties that Mrs. Aldrich did not have any specific duties to perform for the partnership, that she did not have a place assigned to her in its office; and that she did not have any day to day activities in the business of the firm.

There was no evidence whatsoever that Mrs. Aldrich ever received any money at all from the partnership, even though the profits from the business were very substantial. There was certainly no evidence that she was able to exercise any control whatsoever over any portion of the partnership funds. Even the financial statements lumped her alleged interest in the profits of the partnership with that of Mr. Aldrich, while the interest of Mr. Holland was shown separately.

There was no evidence whatsoever that any disinterested persons regarded her as a partner in this business. The fact that she was described in the firm records, and on partnership tax returns, as a partner is of no moment if in fact she was not a partner. The fact that she signed certain notes and mortgages does not make her a partner in the business. This merely had the effect of binding any separate estate that she had or might acquire as security for her husband's debt. It could not and did not bind the community funds, nor did it change the nature of those funds. United Life and Accident Insurance Co. v. Haley, 178 La. 63, 150 So. 833; Mathews Bros. v. Bernius, 169 La.

1069, 126 So. 556; Howard v. Cardella, 171 La. 921, 132 So. 501.

Counsel for both the taxpayer and the Government rely on the case of ·Britt's Estate v. Commissioner of Internal Revenue, supra, in support of their positions. I believe this case to be favorable to the Government's position, and adverse to the position of the plaintiff taxpayer. It was stated in Britt that even if the conveyance of the partnership interest to the wife was a gift, it would be entitled to recognition for Federal tax purposes if "bona fide, unconditional, and final" with the husband "retaining no dominion or control over the wife's * * * interest." It was there found that there is nothing abnormal or evasive in according a proportionate proprietary recognition to a wife in a family business which has been built up by combined efforts of the members of the family *"and to which the wife contributed substantial services in the past and continued to do so after the reorganization"*. (Emphasis added). It was further determined in Britt that it was "convincingly established by the facts" that the conveyance to the wife was bona fide and unconditional with *"neither the husband nor any other partner retaining any dominion or control over her share"*. (Emphasis added)

We cannot arrive at the same conclusion in the present case. We come to the inevitable conclusion here that Mrs. Aldrich took no active part in the management of the partnership; was neither assigned nor performed any duties for the partnership; held no office in the business; contributed no skill to the business; received no salary or distribution of profits, as such, from the business; and had no control whatsoever over any portion of the profits or funds of the company. This is vastly different from the findings of fact in the Britt case.

■■ In a suit for refund of taxes, the determination of the Commissioner or Director of Internal Revenue is presumptively correct and the taxpayer has the burden of proving by a preponder-

ance of the evidence that the Commissioner's determination was erroneous. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Reinecke v. Spalding, 280 S.Ct. 227, 50 S.Ct. 96, 74 L.Ed. 385.

■ The plaintiff taxpayer here has failed to carry this burden.

Since I have concluded that the plaintiff taxpayer has failed to prove the existence of a bona fide family partnership between her and her husband in accordance with the controlling Federal law, it is unnecessary for me to pass upon the validity of such partnership under Louisiana law, and it is also unnecessary for me to pass upon the validity of the alleged gift of the partnership interest from Mr. Aldrich to his wife, the plaintiff herein.

These reasons will constitute findings of fact and conclusions of law· required by Rule 52 of the Federal Rules of Civil Procedure, and judgment should be entered in favor of respondent and against the plaintiff in accordance herewith.